## THE METHODIST EPISCOPAL CHURCH OF SUN PRAIRIE VS. SHERMAN.

RELIGIOUS SOCIETIES: CHURCH SUBSCRIPTIONS. (1, 2) *How religious society may contract.* (3 – 5) *Validity of proposed subscription to pay church debt, considered.*

1. The plaintiff, being a corporation aggregate, and having a board of trustees to manage its affairs, can contract only through the aggregate body by vote; or through the board of trustees, by vote; or through an agent authorized by vote of one body or the other, or both.

2. Whether plaintiff can contract *by parol* except through an *agent* authorized by vote, *quære.*

3. Where a clergyman, engaged to conduct the services at the dedication of a church, was requested by an informal meeting of trustees, pastor and class leaders, to solicit subscriptions, during the dedication services, for paying off the indebtedness of the church, but was not appointed agent to receive such subscriptions *by a vote* either of the plaintiff corporation or of the trustees: *Held*, that he had no authority, for the corporation, to accept a subscription.

4. Defendant and others having made certain proposals in response to such a solicitation, during such dedication services, there being present no formal meeting of the corporation or of its trustees: *Held*, that defendant's proposal remained a mere offer, which he might retract, until accepted by the corporation.

5. Afterwards a trustee called upon defendant to perform his offer as understood by the plaintiff corporation; but it does not appear that such trustee was authorized by the corporation, or that it had accepted defendant's offer. Defendant thereupon repudiated the offer in the sense so put upon it. *Held*, that this was a sufficient *revocation* of the offer, if made as claimed by plaintiff.

6. The question upon which the court was divided in *Lathrop v. Knapp,* 27 Wis., 214, is not considered in this case.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff is a religious society incorporated according to law, and brought this action to recover on an agreement alleged to have been entered into by defendant, June 17, 1868, by which he agreed to pay plaintiff one hundred dollars, to aid in finishing its church building then in process of construction, and in paying the indebtedness already incurred by plaintiff in constructing said building. Answer, a general denial.

The court found the facts, in substance, as follows: At the time of the alleged agreement, plaintiff had been and was engaged in the erection and completion of a church, at a cost of several thousand dollars, and then owed over $4,000 for work already done on the building, and had just contracted with the builder to complete the building for $7,500, including said balance of indebtedness and what had been paid. The estimated cost of completing said building, at that time, was over $200, and it was afterwards completed under said contract at a cost of over $200. On the day of dedication of said church the minister who preached the sermon [the Rev. Dr. Hatfield], at the request of the proper officers, and immediately after the sermon, and in the presence of a large congregation, including the defendant, stated the amount necessary to pay the past indebtedness and complete the church to be about $4,400, and thereupon solicited subscriptions for such purposes, and named a person to take down the names of subscribers and the amounts subscribed. After several subscriptions of sums larger than $100 had been made by others than the defendant, said minister solicited subscriptions in amounts of $100; and while these were being asked and taken down, defendant arose in his place, and said, addressing the minister: " I will take the last hundred," or " Put me down for the last hundred dollars," or " I will give the last hundred dollars." Thereupon several who then became subscribers, said they would take upon the same terms, meaning that they would

take or subscribe, if enough was taken to pay off the said indebtedness and complete the church; and very soon amounts were announced and taken down, which, with those before taken down, amounted to $4,500 and more. Among the $100 subscriptions, defendant's was announced and taken down in the same manner as the rest, by merely writing his name with the amount opposite; and he did not announce any other qualification to his subscription than as above stated. Soon after, on June 20, 1868, the subscription was demanded of him, and he refused to pay it, or to give his note bearing interest. A large amount of said subscriptions have been paid and applied towards extinguishing said debt, by others.

On these facts the court held that plaintiff was entitled to judgment for $100 and interest. Judgment accordingly; from which defendant appealed.

*Wm. Reeves*, with *Gregory & Pinney*, of counsel, for appellant:

1. The proof in the case fails to show that the house was in any degree *finished*, or that any *new* debt was contracted, on the faith of the subscription. 2. The promise sued on was void for want of a consideration. In order that one promise may be a good consideration for another, the promises must be concurrent, and one the basis upon which the other depends. *Cooke v. Oxley*, 3 Term, 653; *Livingston v. Rogers*, 1 Caines, 584. The public advantage arising from the payment of the church debt was common to all, and in no sense a personal benefit to the defendant, and therefore was no consideration. *Trustees of Hamilton College v. Stewart*, 1 Coms., 581. A subscription, like any other promise or offer, requires a consideration to support it; but if it is acceded to, and labor or money expended on the faith of it, the party making it may be bound, rather on the ground of estoppel than otherwise. *Farmington Academy v. Allen*, 14 Mass., 172; *Bryant v. Goodnow*, 5 Pick., 228; *Amherst Academy v. Cowls*, 6 id., 427; *Warren v. Stearns*, 19 id., 80; *Mirick v. French*, 2 Gray, 422; *University v. Buell*,

2 Vt., 48. The following cases are authorities that the contract was void for the reasons above stated: *Gilmore v. Pope*, 5 Mass., 491; *Bontelle v. Cowdin*, 9 Mass., 254; *Limerick Academy v. Davis*, 11 id., 113; *Bridgewater Academy v. Gilbert*, 2 Pick., 579; *Foxcroft Academy v. Favor*, 4 Greenl., 382; *Galt v. Swain*, 9 Gratt., 633; *Underwood v. Waldron*, 12 Mich., 73; *Gitlings v. Mayhew*, 6 Md., 113; *Phipps v. Jones*, 20 Pa. St., 260; *Barnes v. Perine*, 12 N. Y., 25; 1 Parsons on Con., 453, 454; Metcalf on Con., 185, 186; Addison on Con., 20, 22, 34; *Lathrop v. Knapp*, 27 Wis., 230. 3. The preponderance of evidence tends to show that the contract was conditional.

*E. A. Spencer* and *P. L. & R. C. Spooner*, for respondent:

1. The law is well settled, that when expenses or liabilities have been incurred by persons upon the faith of subscriptions made by other persons for any benevolent purpose, without any notice of withdrawal, such subscriptions are binding. Such were the proofs in this case. *Lathrop v. Knapp*, 27 Wis., 221 – 235. 2. The only condition of the subscription was, that enough should be *subscribed* to pay the indebtedness and finish the church; and this condition was fully complied with. 3. There was a consideration for the promise, and the plaintiff, for whose benefit the promise was made, has a right to sue for the breach of it. *Kimball v. Noyes*, 17 Wis., 695; *Lathrop v. Knapp*, above cited.

RYAN, C. J. The question on which this court was divided in *Lathrop v. Knapp*, 27 Wis., 214, was elaborately discussed in the briefs on both sides of this case. But we cannot consider the question in this case. For a careful examination of the record satisfies us that a contract in form, valid or invalid, was not proved.

The respondent is a corporation aggregate, having a board of trustees to manage its affairs. We need not stop to consider how far the power to contract is in the aggregate body or in the select body. It must be wholly in the one or the other,

or partly in both. There may be a doubt whether it can contract by parol, except through an agent authorized by vote. *A. & M. Turnpike Co. v. Hay*, 7 Mass., 107. But, pretermitting that question, it could certainly contract only through the aggregate body, by vote, or through the select body, by vote, or through an agent authorized by vote of one body or the other, or both. Angell & Ames, §§ 231, 232.

It does not appear in the record that Dr. Hatfield was appointed agent to receive subscriptions, by vote of either body. On the contrary, it does appear by the evidence of one of the trustees, that his only show of authority was a request at an informal meeting of the trustees, pastor and class leaders. This gave him no authority for the corporation.

He solicited subscriptions, during a religious service, for a religious purpose. Manifestly there was present no formal meeting of the corporation aggregate, or of the select body. The appellant then made the offer, when there was present no body or agent authorized to accept it for the corporation. It remained a mere offer, which the appellant might retract, until accepted by the corporation. Addison on Con., 36.

Some three days after it had been made, one of the trustees called on the appellant to perform his proposal, as it seems to have been understood. But it does not appear that the trustee was so authorized by the corporation, or that the corporation had accepted the appellant's proposal, so that it had ripened into a contract. The trustee's agency seems to have been, like Dr. Hatfield's, informal. There does not appear to have been any intermediate meeting either of the aggregate or the select body. The record discloses one meeting of the trustees, some two days before the religious meeting in the church, and no other. And the presumption seems to be, that there had been no other corporate meeting, when the trustee called on the appellant.

Granting that the appellant's offer, if accepted by the corporation, would bear the construction put upon it in the complaint

in this cause, it is very certain that the appellant undertook to revoke it, by his language to the trustee who claimed performance of it. He repudiated any promise to do other than to pay Mr. Delamater the last hundred dollars necessary to pay him in full for the church building. And, until it appears that the corporation had before that accepted the proposal, the appellant's revocation must be held to have been in time.

We entertain this view of the case with regret, but regret more that the case is here. The voluntary action of parties with a view to the worship of Almighty God should be settled amongst them in a spirit becoming the object. But when such cases come here, we must apply the rules of law to them, as to mere secular matters.

*By the Court.*—The judgment of the court below is reversed ; and, as it is not at all clear that all the facts appear in the record, the cause is remanded for a new trial.