# ROBERTS VS. McGRATH.

PROMISSORY NOTE. DELIVERY. (1) *Nondelivery always a defense, unless maker estopped by his own negligence.* (2) *Case stated. Maker not estopped.* (5) *Question of agency in such a case.*

REVERSAL OF JUDGMENT. BILL OF EXCEPTIONS. (4) *Judgment reversed for error in instructions, though the record does not contain all the evidence.*

1. An instrument in the form of a negotiable promissory note, which was *never delivered* by the alleged maker, has no legal existence as such note: and the party sought to be charged upon it may always, unless estopped by his own negligence, defend successfully against it, without regard to the time when, or the circumstances under which, it was acquired by the holder. *Walker v. Ebert,* 29 Wis., 194, and the subsequent cases in this court, reaffirmed.

2. Instruments in the form of negotiable notes and mortgages securing them, running to a railroad company, were deposited by the makers with one S., to be held by him subject to their order only; and an agent of the railroad company fraudulently induced a clerk of S. to let him take the instruments for the purpose of making a schedule of them, with a pledge to return them as soon as that was done; but such agent delivered them to the company, which negotiated them, for value to persons who had no notice of the facts. In an action upon one of said mortgages, and the note secured by it: *Held,* that these facts do not show any valid delivery of the note.

3. It was error, therefore, to refuse to instruct the jury that, "to make defendant liable on the note, it must have been intended to be put into circulation by delivery, or so put in circulation through some negligence or fault on his part."

4. The fact that the bill of exceptions is not certified to contain all the evidence, makes no difference in this case, as the evidence contained in the bill shows the instruction refused to have been pertinent and material.

5. The mere fact that defendant's note and mortgage were sent *by one P.* to S., for deposit in the safe of the latter (there to be kept subject to the order and legal control above stated), would not show that P. had any authority to direct S.'s clerk to deliver the instruments to the agent of the payee for any purpose. But in this case it does not appear that P. gave any such directions.

APPEAL from the Circuit Court for *Wood* County.

This action is on an instrument purporting to be a promissory note made by the defendant, payable to the Milwaukee & Horicon Railroad Company or order, and (as seems to be conceded, although the record fails fully to show the fact) indorsed to the plaintiff by the payee. The plaintiff received the note in due course of business, before due, for value, and without notice of any defense thereto. The answer of the defendant alleges that the note was never delivered to the payee, but was clandestinely and fraudulently obtained by it, without the knowledge or consent of the defendant, from a person with whom the defendant had deposited it to hold the same subject to his order.

It appears from the evidence, and is not disputed, that in the year 1856, the payee, the Milwaukee & Horicon Railroad Company, contemplated the procuring of authority from the legislature to extend its railroad to Grand Rapids (which it was not then authorized to do), and proposed to the citizens of that place and of Centralia that they take $75,000 of the stock of the company to aid in such extension. For the purpose of ascertaining approximately how much stock would be thus taken, many citizens of Grand Rapids made and executed their several notes and mortgages for different sums (but did not deliver the same), with the understanding and agreement between them and the railroad company that the securities should be deposited in the safe of one Scott, but to remain entirely under the control and subject to the orders of the makers and mortgagors respectively. In case the latter should elect to deliver the same to the railroad company, the securities were to be received by it in payment for stock. Among the papers so deposited was the note in suit, and a mortgage to secure the same executed by the defendant and his wife. The defendant sent the note and mortgage by Mr. Powers to be deposited in the safe of Scott; and Powers placed them there.

A short time after (the precise time does not appear), the agent of the railroad company who was instrumental in pro-

curing the notes and mortgages to be executed, went to the store of Scott, in his absence, and obtained possession of the same by pledging his honor to the clerk of Scott that he only desired them to make an abstract or schedule of names, descriptions and amounts, and would return them to the safe as soon as that should be done. Mr. Powers was present on that occasion, and said to the clerk that he thought it a courtesy due to a gentleman who had given his word of honor to return the papers, to allow him to take them long enough to look them over; but at the same time Mr. Powers stated that he had no authority over them. The agent did not return the securities to the safe, but delivered them to the payee, the railroad company, which negotiated them, after having the mortgages registered in the office of the register of deeds. Among the securities thus taken from the safe, delivered and negotiated, was the note in suit.

When the defendant learned that his note and mortgage had thus passed into the hands of the payee, he made diligent efforts to regain possession thereof, but without success.

Under the instructions of the court (which are sufficiently stated in the opinion), the jury returned a verdict for the plaintiff for the amount of the note, principal and interest. A motion for a new trial was denied, and judgment entered pursuant to the verdict. The defendant appealed.

*C. M. Webb*, with *G. L. Park* of counsel, for appellant, to the point that the note in suit, never having been *delivered* with the knowledge and consent of the maker, or in accordance with his intent, nor through any culpable negligence on his part, never had any legal inception or valid existence, cited Edwards on Bills and Notes, 186, 187, 369; 16 Wis., 552; Story on Prom. Notes, § 9; 3 N. Y., 270; 2 Parsons on Bills and Notes, 489 et seq.; 3 Denio, 340; *Vallette v. Parker*, 6 Wend., 615; *Dunn v. Smith*, 12 S. & M., 602; 29 Wis., 626; 29 Iowa, 495; *Foster v. Mackinnon*, 38 Law Journal, 310; *Whitney v. Snyder*, 2 Lans., 477; *Walker v. Ebert*, 29 Wis.,

194; *Kellogg v. Steiner*, id., 626; *Burson v. Huntington*, 21 Mich., 415.

*Davis & Flanders*, for respondent:

1. Defendant made a complete promissory note, and put it into the possession of Powers, the attorney who wrote the note and mortgage, with instructions to put it in a safe in Scott's store. Powers deposited it there without communicating to Scott, or any one in the store, the fact that there was any limitation to his authority over this note. When Ewing, the payee's agent, sought to obtain possession of the note, Powers, being consulted, advised that he be permitted to have it. Was not this a delivery of the note? *McGrath* had never instructed Scott or his employees to keep the note subject to his orders; nor had Powers told Scott or his employees that such was *McGrath's* order. If *McGrath's* confidence in Powers' discretion and wisdom were misplaced, the law is clear that he, and not an innocent holder, must suffer. And so, if the note passed into the payee's hands through the fault of the depositary, chosen by *McGrath's* attorney with the concurrence of his principal, the rule of law is the same. The case is not different from that where the maker of a note entrusts it to a clerk with the understanding that the latter shall use it for a particular purpose, and the payee fraudently obtains possession of it through the inexperience of the clerk; and in such a case the maker is held bound to pay the note in the hands of an innocent holder who purchased for value before maturity. *Putnam v. Sullivan*, 4 Mass., 45. 2. Such a holder takes the note free from *all* equities. It was so held in *Clark v. Pease*, 41 N. H., 414, where the note was *obtained by duress*. So in *Powers v. Ball*, 27 Vt., 663, REDFIELD, C. J., declares that "if any rule of law in regard to negotiable paper is well established, it is, that a *bona fide* holder for value will be able to shut out all defenses except certain statutory ones, where the paper in its inception is declared absolutely void, as notes given upon gambling and usurious considerations;"

and that "illegality, fraud, duress and want or failure of consideration are no defenses" as against such a holder. The same doctrine has been held where the note was stolen and thus put into circulation (*Gould v. Segee*, 5 Duer, 266; *Shipley v. Carroll*, 45 Ill., 285); where it was obtained by fraud (*McDonald v. Muscatine Bank*, 29 Iowa, 319; *Douglas v. Matting*, id., 498; *Lonnes v. Metcalf*, 30 id., 382; *Woodward v. Rogers*, 31 id., 342; *Kinyon v. Holford*, 17 Minn., 239; *Holcomb v. Wyckoff*, 35 N. J. Law, 35); and where the maker was intoxicated when the note was made (*State Bank v. McCoy*, 69 Pa. St., 204). There are decisions of similar character in every state in the union : *Fossitt v. Bell*, 4 McLean, 427; *Payne v. Bensley*, 8 Cal., 260; *Codwise v. Glenson*, 3 Day, 12; *Smith v. Lloyd*, T. U. P. Charlton, 253; *Bond v. Central Bank*, 2 Ga., 92; *Glover v. Jennings*, 6 Blackf., 10; *Kelly v. Smith*, 1 Metc. (Ky.), 313; *Spencer v. Biggs*, 2 id., 123; *Kohlman v. Ludwig*, 5 La. An., 33; *Nutter v. Stover*, 48 Me., 163; *Bates v. Butler*, 46 id., 387; *Gwynn v. Lee*, 9 Gill, 137; *Mercien v. Cotton*, 34 Miss., 64; *Sanderson v. Crane*, 14 N. J. Law, 506; *Alderson v. Cheatham*, 10 Yerg., 304; *Watson v. Flanagan*, 14 Tex., 354; *McNeil v. Baird*, 6 Munf., 316; *Johnson v. Meeker*, 1 Wis., 436; *Clapp v. Mock*, 8 Ala., 122; *Saltmarsh v. Tuthill*, 13 id., 390; *Woodworth v. Huntoon*, 40 Ill., 131; *Latham v. Smith*, 45 id., 25; *Fletcher v. Gushee*, 32 Me., 587; *Sims v. Lyles*, 1 Hill, 39; *Donelson v. Young*, Meigs (Tenn.), 155; *Veach v. Thompson*, 15 Iowa, 380; *Robinson v. Gould*, 11 Cush., 55; *Waterman v. Barrett*, 4 Harr., 311; *Holmes v. Hill*, 19 Mo., 159; *Kelly v. Noyes*, 43 N. H., 209. 3. The cases chiefly relied upon by the defense are clearly distinguishable from the one at bar. In *Burson v. Huntington*, 21 Mich., 415, the decision of the court is placed upon the ground, that the maker had never parted with the possession of it, and had been guilty of no laches. In the present case the maker had parted with the note, and it passed into circulation through his negligence, or (which is the same thing) that of his agent. In *Foster v. Mackinnon*, 38

L. J. R. (N. S.), 310 ; *Whitney v. Snyder*, 2 Lans:, 477 ; *Walker v. Ebert*, 29 Wis., 194, and *Kellogg v. Steiner*, id., 626, the signer was deceived as to the character of the paper which he signed. We have no occasion to question the soundness of those decisions, though they have gone much farther than decisions in many of the other states, as will be seen by cases above cited from New Jersey, Iowa and Minnesota. See also *Chapman v. Rose*, decided in the court of appeals of New York, reported in 1 Cent. Law J., 242.

Lyon, J. That a *bona fide* holder for value of a negotiable promissory note, before,maturity, takes the same free from equities between the original parties thereto, is a general elementary rule of the law merchant, which none will deny. But, to bring an instrument within this rule, it must be the negotiable paper of the party by whom it purports to have been made. It is not sufficient that it has the form — that it is in the similitude — of such paper ; it must be such in fact. If it never had an inception or legal existence, the party sought to be charged upon it may always, unless estopped by his own negligence, defend successfully against it, without regard to the time when, or the circumstances under which, the holder acquired it. This court so held in *Walker v. Ebert*, 29 Wis., 194 ; in *Kellogg v. Steiner*, id., 626 ; and in the cases of *Chipman v. Tucker* and *Roberts v. Wood*, decided herewith.

That an instrument in the form of a negotiable promissory note, which has not been delivered by the alleged maker thereof, never had an inception and has no legal existence as such, cannot be doubted. *Thomas v. Watkins*, 16 Wis., 549.

In *Walker v. Ebert* will be found an able discussion of. this whole subject by Dixon, C. J., in which he cites and comments upon many of the cases bearing upon it ; and it is not deemed necessary to go over the ground again. The cases just cited must be regarded as settling the law in this state on the subject under consideration. Neither is it necessary to refer at

length to the numerous cases in other states cited by the learned counsel for the plaintiff in support of the opposite doctrine. These may be dismissed with the single remark, that we believe it will be found, on examination, that in a very large majority of them the instruments in question were delivered, but were attacked for fraud, failure of consideration and the like, or that the alleged makers were fairly chargeable with negligence in allowing the same to get into circulation, and were estopped thereby to deny the inception and existence thereof.

We do not forget the claim, and the argument founded upon it, that *Walker v. Ebert* is unlike the present case in its facts. It is undoubtedly true that the facts of the two cases are different. But the principle upon which the former case was decided is directly applicable here. The principle is, that the protection which the law merchant extends to the *bona fide* holder of negotiable paper who acquired it for value before maturity, does not extend to a case where the instrument never had an inception or lawful existence as such, and where the party sought to be charged is free from negligence.

The record in this case contains abundant evidence that the instrument in suit was never delivered by the defendant to the payee (the railroad company), or to any person for it. It was not even delivered or placed *in escrow*, but was lodged in the safe of Mr. Scott subject to the order and legal control of the defendant alone. Applying to the case the principles above stated, it must necessarily follow that the instrument is not the note of the defendant, and that he is not liable thereon to any person, not even to a *bona fide* holder who purchased the same for value before maturity, unless it got into circulation by means of his negligence.

The court refused to give the jury the following instruction prayed for on behalf of the defendant, and gave no instruction equivalent thereto: " To make the defendant liable on the note, it must have been intended to be put in circulation by

delivery, or so put in circulation through some negligence or fault on his part, which contributed to, or did, put the same in circulation."

There was considerable controversy on the argument, as to whether the certificate of the circuit judge thereto shows that the bill of exceptions contains all of the evidence introduced on the trial. Whether it does or not, the record contains sufficient of the evidence to show that the proposed instruction was material and pertinent to the case. And it necessarily results from the views above expressed, that the same should have been given.

The court instructed the jury as follows: "If Powers, after placing the same [the note] in the safe, although protesting that he had no authority to do so, directed the person in charge of the safe to deliver the note to the agent of the payee, the plaintiff, if an innocent holder for value before maturity, is entitled to recover." We find no evidence in the record that Mr. Powers had any authority whatever to direct a delivery of the securities, or that he gave any directions to deliver the same. If all the evidence is before us, this instruction (which was duly excepted to) was clearly erroneous, there being no testimony to support it.

It would be improper to indicate here any opinion on the question of the alleged negligence of the defendant. That will be for the jury to determine when the cause shall be again tried.

*By the Court.* — The judgment is reversed, and the cause remanded for another trial.