## St. Patrick's Roman Catholic Church, Etc.

### *v.*

### Louis Gavalon.

1. Churches—*how contracts by may be executed.* Where there is no evidence before the court as to the manner in which a church contracts debts and executes contracts, and it appears that there are trustees, it will be presumed, in the absence of proof, that the trustees are empowered to make contracts and incur indebtedness on account of the church property.

2. Church trustees—*must act as a body, to bind the church.* Where the trustees of a church are authorized to execute contracts for a church, they should act as a body, or delegate the power to one of their number, or ratify and approve the act of one of their number acting for them, and unless they do so, the church, as a corporation, will not be bound. The unauthorized act of one of the trustees can not bind the church as a corporation.

3. Where the officiating priest of a church, who is a member and chairman of the board of trustees, employs a person to work for the church, without authority from the other trustees, and the act is not ratified by them, the church is not liable.

Appeal from the Circuit Court of St. Clair county; the Hon. William H. Snyder, Judge, presiding.

Messrs. Conlon & Hite, for the appellant.

Mr. T. Quick, and Mr. J. B. Merrick, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

The court below overruled a motion for a new trial, and rendered judgment on the verdict, and thereupon defendant appealed to this court. The grounds relied on for a new trial were, that the verdict was not sustained by the proofs in the case, and of newly discovered evidence. The latter of these grounds is not urged in argument, and seems to have been abandoned. We shall, therefore, turn our attention only to the former.

It appears that the pastor of the church employed appellee, and he swears that it was on his own individual account. He swears that appellee was not employed by the church. On the

other hand, appellee does not deny that the pastor employed him. He says: "I worked for the St. Patrick's Roman Catholic Church of East St. Louis—well, I was really working for Father Zabel, for twenty dollars a month, and Father Zabel promised me twenty dollars a month; and he wanted me to work and do all the business about the church, serve the church, clean the church, and do all these things." This is his first statement, as contained in the record. But he states, in other portions of his evidence, that he kept the pastor's horse, went to the post office, to market, and on various errands for the priest. He also, during the time he was employed at twenty dollars a month, dug graves and filled them, for which the pastor received the pay. Appellee also worked the priest's garden. He made fires, swept the church and rung the bell, and performed various duties that witnesses testified belonged to the duties of sexton. He also performed other labor for the church, such as constructing a cistern, and working on the belfry of the church, and loaning it some money. Appellee also claims a considerable sum for digging graves in the grave-yard attached to the church, after he left the employment of the priest. But the latter says that he was to look to persons having graves dug for payment, and not to him or the church.

Appellee and the pastor differ widely in their understanding as to the state of accounts between them. The former claims that the church owes him $1010, whilst the latter claims the church owes him nothing, and that he only owes him thirteen dollars.

No evidence was before the court as to the manner in which the church contracts debts and executes contracts; but it does appear there were three trustees, of whom the officiating priest was one, and seems to have been the chairman or presiding officer—the "head," as stated by some of the witnesses. And we will presume, in the absence of evidence to the contrary, that these trustees were entrusted with the control of the temporalities of the church; that they were empowered to make contracts and incur indebtedness, on account of the church property. We can conceive of no other duties they could per-

form as trustees. It surely did not devolve upon them to govern the church, or in anywise participate therein, or to intermeddle with the spiritual affairs of the church.

If, then, this was the duty of the trustees, they could alone act; and to be valid and binding, they should act as a body, or delegate power to one of their number, or other person, or ratify and approve the acts of the member of the board acting for them, before the church, as a corporation, would be bound thereby. The unauthorized act of one of the trustees could not be held to bind the church as a corporation. This has been held as to directors of schools, and as to trustees of other churches, where they have given notes in their individual names for property applied to the use of the church. *Powers* v. *Briggs,* 79 Ill. 493; *Burlingame* v. *Brewster,* id. 515.

In this case, it would not matter that some of the labor was performed for the church, if the priest alone employed appellee, without express or implied authority from the other trustees, or the act was ratified by them.

We are strongly inclined to think, from the evidence in the record, that appellee did not regard his contract as being with the church, but with the priest in charge, individually. Appellee seems never to have called on the trustees for pay, nor to the priest in charge, who succeeded Father Zabel. On the contrary, he wrote twice to the latter at Cairo, where he was stationed, to procure the money he claimed to be due. Had he regarded the church as being his debtor, he would, doubtless, have demanded payment from its officers, and not from a priest whose connection with that particular church had ceased. He says he never demanded his money from the church, but, on the contrary, he seems to have several times demanded it of the priest, with whom he made the contract, and that, too, after he ceased to officiate for appellant. We are of opinion, that the evidence fails to show the church liable, and it, therefore, fails to sustain the verdict.

For the error indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT, dissenting:

The contention in this case is, whether plaintiff was in the employ of defendant, or of the witness Zabel. That question was made before the jury, who found against defendant on that issue. Upon this vital point in the case, the evidence is quite conflicting, and, indeed, it may be said to be irreconcilable. But there are some facts in the case, about which there can hardly be any real controversy, that tend to strengthen the theory of plaintiff, upon which he based his right to recover.

The defense insisted upon by defendant is, that plaintiff was in the personal service of Father Zabel, the priest in charge of the church. It seems to be conceded, the priest in charge is, in some sense, an agent of the church, and, in connection with its other officers, has charge of its temporal and business affairs. At all events, he assumed to act on its behalf, without objection from any one, and the society or church availed of the benefit of his acts. The money which plaintiff let the priest have was for the benefit of the church, and was so used. In the light of the testimony, it can not be said it was for the individual interest of the priest. He used it for the church, and it was obtained for that purpose.

The same may be said of the personal services rendered by plaintiff. They were largely on account of the church, and, indeed, almost exclusively the work he did was that which the society was obligated to do. What he did in the personal service of the priest, was of no considerable importance, and constituted but a small portion of his labors. The work plaintiff did in the cemetery was on account of the church, from which it must have derived an income, and of which, no doubt, the priest as financial agent rendered an account. Other services in and about the church were rendered on behalf of the society worshipping there, and there is no reason why defendant should not pay for them. *St. Patrick's Roman Catholic Church* v. *Abst*, 76 Ill. 252. In that case, as in this, the hiring was by the priest, as the agent of the corporation.

All the services performed were for defendant, and plaintiff

ought not to be driven to an action against the officiating clergyman for the value of his labor. It is not just either to the priest, who was but the agent of defendant, nor to plaintiff. Assuming, as I do, the proof warrants the finding of the jury that plaintiff was in the employ of defendant, I think the verdict found, as to the amount found, is fully sustained by the evidence, and the judgment ought to be affirmed.

Mr. CHIEF JUSTICE SHELDON: I concur in the foregoing opinion of Mr. JUSTICE SCOTT.

Mr. JUSTICE DICKEY: I also concur in the views of Mr. JUSTICE SCOTT.