## LEONARD VS. LENT.

RELIGIOUS CORPORATION: *(1) When acts of trustees binding. (2) Subscription to, when valid.*

PROMISSORY NOTE: *(3, 4) Delivery and acceptance necessary; when they will not be presumed.*

1. Trustees of a church corporation, to bind it, must act officially, at official meetings, or under authority conferred by such meetings (R. S., ch. 66, sec. 12); and a lawful meeting is one duly called, and which all the trustees have at least constructive opportunity to attend.

2. At a dedication of a church edifice, defendant and others, at the request of the person who conducted the services, made subscriptions "for the purpose of paying the expenses of building and furnishing such edifice." Most, or possibly all, of the trustees of the church corporation met the evening before, and had some informal conversation, to the effect that the subscriptions should be thus taken; but it does not appear that all were certainly present or had received notice of such meeting, or that there was any official meeting or action of the board of trustees at that time; nor were such subscriptions accepted at any subsequent meeting of the board or corporation. *Held,* that defendant's subscription was not a valid contract. *(M. E. Church v. Sherman,* 36 Wis., 404.)

3. Defendant afterward executed and delivered to one G. (who was a trustee and the treasurer of the church corporation) his notes for the amount of said subscription, running to one F. or bearer; and G., some years after, transferred them to the plaintiff, in part payment of a note executed to the latter by the trustees of the church and others for moneys advanced by him to apply on the building of the church edifice. *Held,* that there is no presumption that the corporation did all that was necessary to hold defendant on his subscription and notes, but the burden is upon plaintiff, if he claims by right of the corporation, to show that it accepted the notes for the subscription; and, in the absence of such proof, no contract appears between defendant and the corporation.

4. The notes were handed to G. without direction, by the maker; G. was not F.'s agent to take them from him, and did not deliver them to him; nor does it appear that F. ever claimed as payee of the notes, or consented to accept them. *Held,* that when the notes were negotiated to plaintiff, no title to them had vested in F. or in any other person, and they were not contracts; and no title to them vested in the plaintiff by G.'s delivery to him, even if he advanced a new consideration for them.

APPEAL from the Circuit Court for *Jefferson* County.

Action upon three promissory notes, amounting in the aggregate to $100, besides interest.

The defendant being present at the dedication of a church edifice, a statement was read by a trustee of the society and member of the building committee, showing the indebtedness of the society or corporation, contracted in the erection of the building, and the sum needed to complete the same; and subscriptions were solicited upon the basis of a written document, which was read, and is in the terms following:

"LAKE MILLS, *September 15, 1869.*

"For the purpose of paying the expenses of building and furnishing the Methodist Episcopal Church in the village of Lake Mills, we each respectively promise to pay to A. D. Faville or bearer, the sum set opposite to our names on the following pages of this book. The amount put down shall become due on demand, unless the time of payment is specified in connection with the names."

Under this heading, the minister in charge of the meeting, acting as clerk, set down the names of subscribers as announced, with the amounts subscribed by them respectively. Defendant, with his assent, was put down for $100, payable in one, two and three years, and the whole amount there subscribed was $4,391.

A few days afterward, the treasurer of the society, one Griswold, spoke to the defendant, and, stating that they were getting the subscriptions into notes, presented the three notes in suit, which were drawn payable in one, two and three years, to A. D. Faville or bearer; and defendant signed them, leaving them in Griswold's possession.

The other subscriptions were also converted into notes of like tenor, and were used from time to time in liquidating the indebtedness of the church and defraying the expenses (some $400) incident upon the completion of the building.

Faville, who was one of the trustees, testified: "The notes

were taken in my name as a mere form. They were taken for the church, for the society.  *  *  *  After we received this subscription, I went on with the other treasurer and helped pay off the debts. We thought we had a reliable subscription, decidedly, and it was the business of our treasurer, after the dedication, to convert the subscription into notes, so as to make it negotiable anywhere. We thought it was better put into notes than in the subscription.  *  *  *  On the basis of these notes, we went on and liquidated the debts as fast as we could, after the dedication, and the notes were taken for subscriptions. We raised money on them to pay off the debts of the church."

It did not appear that the notes in suit, or, in fact, any of those taken for subscriptions, were ever actually delivered to Faville, the payee, or that at any meeting of the trustees subsequent to the dedication, they had taken any official action accepting the subscription or the notes. It was in evidence that, on the night preceding the dedication, a meeting or conference was held between the trustees and the minister who was to conduct the dedicatory exercises, at which it was agreed that a subscription should be taken after the plan pursued on the following evening; but it was not shown how such meeting was called, whether any previous notice of it was given, or whether all of the trustees were present; and no record could be found of its proceedings.

The notes in suit, after remaining in Griswold's possession some five years, were turned out by him to plaintiff in payment of the interest due upon a note executed by the trustees to the latter for a debt contracted in the building of the church.

Upon these facts, by direction of the court, a verdict was found for the defendant; and from a judgment upon the verdict, the plaintiff appealed.

The cause was submitted for the appellant on the brief of *L. B. Caswell:*

The mutual promises of the contributors, and the obligation of the trustees to faithfully expend the moneys thus raised, furnished a good consideration for the notes. *Lathrop v. Knapp*, 27 Wis., 214; Story on Con., 5th ed., p. 529, § 577, and note 4; § 570, and note 5; 16 Gray, 196; 1 Met., 565; *Society in Troy v. Perry*, 6 N. H., 164; *George v. Harris*, 4 id., 533; *Commissioner v. Perry*, 5 Ohio, 28; *State Treasurer v. Cross*, 9 Vt., 289; 9 Cush., 547; 2 Gray, 420; 6 Pick., 427. The expenditure of money after the subscription, and upon the faith of it, estops defendant from denying the validity of his notes.

The trustees determined beforehand to take this subscription; they had a right to take notes to represent it (*Blunt v. Walker*, 11 Wis., 334); they did take notes, which were held by the corporation four or five years, used by it as a basis for borrowing money, and finally sold. It must be presumed, therefore, in the absence of evidence to the contrary, that whatever was necessary to be done to render the notes and subscription valid, was done. In *Church of Sun Prairie v. Sherman*, 36 Wis., 404, the action was on a mere subscription; the records of the church were introduced; and, from those and other evidence, it appeared affirmatively that no authority was given any person to take the subscription. Here, the record was not produced, and in its absence authority will be presumed. There is nothing negativing such presumption, but, on the contrary, whatever evidence there is goes to support it. There, also, the defendant repudiated his subscription at once; here, he ratified it by giving his note.

For the respondent, a brief was filed by *N. Bruett* and *G. W. Bird*, and there was oral argument by *Mr. Bird:*

1. The meeting of the trustees before the dedication was not regularly called; their action was unofficial, and, no one being authorized to solicit or receive the subscriptions, they created no legal liability. R. S., ch. 66, sec. 12; *M. E. Church v. Sherman*, 36 Wis., 414; *Canmeyer v. Lutheran Church,*

Leonard vs. Lent.

2 Sandf. Ch., 208; *Constant v. St. Alban's Church*, 4 Daly, 305. 2. The subscription being invalid, the notes founded on it are without consideration, and void. *Frey v. Fond du Lac*, 24 Wis., 204; *Smith v. Ware*, 13 Johns., 257; *Ehle v. Judson*, 24 Wend., 97; *Watkins v. Halstead*, 2 Sandf., 311; *Eastwood v. Kenyon*, 11 Ad. & El., 438; *Geer v. Archer*, 2 Barb., 420; *Nash v. Russell*, 5 id., 556; *Villie v. Osgood*, 8 id., 130. Moreover, the act of Griswold in turning the subscription into notes was as unauthorized as the taking of the subscription. 3. The note held by plaintiff, on which defendant's notes were turned out, was the individual note of the trustees, and not a corporate obligation. (1) Neither the loan nor the giving of the note was authorized at any legal meeting. *Dennison v. Austin*, 15 Wis., 334. (2) The corporation had no power to incur a debt of that character without reference to a fund from which it was to be paid. R. S., ch. 66; A. & A. on Corp., § 504; 2 Kent's Com., 338, 376. 4. Even if defendant's notes created a legal liability in favor of the church, the treasurer could not transfer them in payment of this individual debt of the trustees, and plaintiff acquired no title. *Marine Bank v. Clements*, 3 Bosw., 600; *Conro v. Iron Co.*, 12 Barb., 27; *Jackson v. Campbell*, 5 Wend., 572; *Hoyt v. Thompson*, 5 N. Y., 320; *Austin v. Daniels*, 4 Denio, 299; *Blood v. Marcure*, 38 Cal., 590; *Denberry v. Stevens*, 40 How., 340.

RYAN, C. J. We affirm the judgment in this case, as we reversed the judgment in *M. E. Church v. Sherman*, 36 Wis., 404, with regret. There are imperfect obligations in law, which are not imperfect in morals. And such we are constrained to hold the obligation of the respondent in this record.

There seems to have been some confusion in this case between the respondent's liability on his subscription to the church corporation, and on his promissory notes to Mr. Fa-

ville.   They appear in the record to be quite distinct, neither materially affecting the other.   An incomplete case upon the subscription, and an incomplete case upon the notes, cannot be put together to make a complete case for the appellant.   It is indispensable to a clear comprehension of the case, to consider each apart from the other.

Whether or not the subscription would have been valid if the corporation had been a party to it, need not be considered; because the privity of the corporation does not appear.

It was argued for the appellant that there was a meeting of the trustees of the corporation, before the subscription was made, authorizing Dr. Hatfield to receive such subscriptions. The evidence is that most, or possibly all, of the gentlemen who were members of the board of trustees, met the evening before, and had some informal conversation to that effect. But it does not appear that all were certainly present or had received notice of a meeting, or that there was an official meeting or action of the board of trustees.   And there is no pretense that there was any subsequent meeting of the trustees as a body, formal or informal, to accept the subscription, or to authorize notes to be taken for it, or to authorize them to be made payable to Faville, or to authorize their transfer to the appellant.   Trustees of such a corporation, to bind it, must act officially, at official meetings, or under authority conferred at official meetings.   R. S., ch. 66, sec. 12.   The construction of this section is stated in *United Church v. Vandusen*, 37 Wis., 54: " A call is a call of all the trustees, and a lawful meeting is one which all have at least constructive opportunity to attend.   A corporation is not represented by every casual meeting of a majority of its governing body. And all the trustees, acting personally, without an authorized and official meeting, could not bind the church.   Ang. and Am. on Corp., §§ 231, 489, 491, 492; *Dennison v. Austin*, 15 Wis., 334; *Methodist Church v. Sherman*, 36 id., 404."

The records of the corporation were not in evidence.   And

the appellant argues that there is a presumption that the corporation did all that was necessary to hold the respondent on his subscription and notes, and that the *onus probandi* against the presumption was upon the respondent. *Omnia præsumuntur rite acta donec probetur in contrarium.* It might be enough to say that the presumption assumed appears to be sufficiently rebutted by the parol evidence. If the notes had been payable to the corporation, and gone into its possession, there might be a presumption of acceptance. But the notes were not payable to the corporation. The answer pleads that they were " executed to represent " the subscription, but not that they were made or delivered to the corporation, or to Faville for the corporation. The possession by the corporation of notes payable to another, if proved, could raise no presumption of acceptance of them by the corporation for its own. And so the *onus probandi*, that the notes to Faville were accepted by the corporation, was on the appellant. The trouble throughout is, that the notes, on their face, are disconnected with the subscription.

So far, therefore, as the subscription, and the notes regarded as given for the corporation in payment of the subscription, are concerned, this case is clearly within the rule of *Methodist Church v. Sherman*, 36 Wis., 404. In this case, as in that, " a contract in form, valid or invalid, was not proved."

Had the notes been given to the corporation for the subscription, and accepted, it may be that the transaction disclosed in the record would have been a sufficient consideration to support the notes. There would have been at least a contract in form, and the case would not be ruled by *Methodist Church v. Sherman*.

But the notes were made payable to Faville individually, without apparent authority from the corporation. And if they can be upheld at all, it must be in the right of Faville, and not in the right of the corporation.

It appears that Faville was under liability for the church

building of the corporation; whether officially or personally, we need not stop to inquire. The respondent was interested in the building, expecting use and enjoyment of it. We are not prepared to say that if he assumed a share of Faville's liability, it might not be a sufficient consideration to support the notes. But the question is not in the case.

The difficulty in upholding the notes in favor of Faville is, that it appears that they were not delivered to him.

" Where a bill is originally payable to bearer, and therefore transferable by delivery only, actual or constructive delivery thereof would seem to be indispensable to complete the legal title thereto." Story on Bills, § 203; Chitty on Bills, 172; and numerous cases cited in the notes to those works.

We scrutinized the evidence closely for facts or circumstances to go to the jury, upon the question of delivery to Faville, or to warrant a verdict that the notes had been constructively delivered to him. But we failed to find any evidence tending that way.

These notes were handed by the respondent to Mr. Griswold without direction. There is no pretense that Griswold was Faville's agent to take the notes — had any authority from Faville in the premises. He might perhaps be considered as the respondent's agent to deliver the notes to Faville. But he never did so. And if the notes were in his possession as the respondent's agent, they were in the respondent's own possession. The respondent might have withdrawn them at any time before delivery to Faville. *Brind v. Hampshire*, 1 M. & W., 365. In fact, the record sufficiently discloses that there was no privity whatever between the respondent and Faville, as maker and payee of the notes; or that Faville claimed as payee of the notes, or consented to accept them. He plainly regarded the notes as belonging to the corporation, not to himself, and looked upon Griswold as agent of the corporation, not his own, in the possession and negotiation of the notes. When Griswold assumed to negotiate them, no title

to them had vested in any one. They were not contracts. They were papers in the form of contracts, in the constructive possession of the maker, undelivered, and of no validity. And no title in them vested in the appellant by Griswold's delivery to him; not even if he could be held to have advanced a new consideration for them. So this court has repeatedly held. *Roberts v. McGrath*, 38 Wis., 52; *Roberts v. Wood*, id., 60.

The mind is naturally reluctant to accept such grounds for escape from moral obligation. But the rules of law are the same, whichever party may have the best claim upon moral sympathy; and they must prevail either way, by their own force, without help or hindrance of sympathy. In a moral point of view, the rule might appear plainer, if Griswold had retained the notes, and either the corporation or Faville had brought trover against him. In that case, uninfluenced by the relations of the respondent and the corporation, it appears to us that there could be little hesitation, in any legal mind, in holding that the evidence which we have here would wholly fail to establish a legal title to the notes, in either the corporation or Faville.

*By the Court.* — The judgment of the court below is affirmed.