ESTATE OF MCCANNA : ROUECH and others, Appellants, vs. ST. JUDE'S CHURCH, Respondent.

*February 7—March 7, 1939.*

For the appellants there was a brief by *Fisher & Fisher* of Janesville, attorneys for the objectors, and *John A. Dorney* of Milwaukee, attorney for the administrator, and oral argument by *Cleland P. Fisher*.

For the respondent there was a brief by *Nolan, Dougherty, Grubb & Ryan,* and oral argument by *Crosby H. Summers,* all of Janesville.

FRITZ, J.  The claim in question is based upon a written subscription agreement dated March 7, 1936.  The agreement provides that "in consideration of the mutual promises and subscriptions of other persons made for said purpose" the subscriber agrees to pay $1,000 "for the purpose of erecting and maintaining its new Brother Dutton National Memorial High School by Saint Jude's Church, a religious corporation of Beloit, Wisconsin, in a total sum not to exceed $300,000, and in proportions by it determined."  The agreement also provides that the church is authorized thereby to expend the subscribed sum "for said purposes, and which

for itself and its successors it hereby agrees to do." After the printed word "accepted" at the foot of the agreement, the words "Saint Jude's Church, by Joseph E. Hanz" were written by the pastor of the church upon obtaining the subscription from McCanna. The evidence establishes that in 1931 Rev. Hanz had discussed with the archbishop of the diocese the establishing of such a memorial high school by St. Jude's Church, and the latter had sanctioned and blessed the project. Rev. Hanz then had preliminary sketches and plans prepared for a building, and selected a site on the church's property. He also prepared printed matter explaining the reasons for the memorial and the meritorious purposes of the project. He obtained nine subscriptions, totaling $11,250, up to January 7, 1936, and McCanna's subscription made the total $12,250; and he collected thereon $1,365, including $40 paid by McCanna on April 13, 1936, which he deposited in a special bank account. No further subscriptions were obtained. McCanna died April 29, 1936. During his lifetime no action was taken in relation to the project at any meeting of St. Jude's Church congregation or its board of trustees or directors. But the board of trustees, at a meeting on December 12, 1936, "voted to indorse the plan of Fr. Joseph E. Hanz to build a new unit, the Brother Dutton National Memorial High School, authorizing him to continue this work started by him with the sanction of the president, the Most Rev. Samuel A. Stritch, D. D., archbishop of Milwaukee, April 24, 1931, thus authorizing him to build up the fund then started for this purpose."

In support of the objection filed to the claim, the defense contends that the mutual promises of other subscribers to agreements to the same effect as McCanna's agreement do not constitute good consideration to render the subscription enforceable as a contractual obligation. The question raised by that contention has not been definitely decided by this

court. It was involved in *Lathrop v. Knapp,* 27 Wis. 214, in which Chief Justice DIXON considered such mutual promises sufficient as consideration, but Justice COLE dissented, and Justice PAINE did not participate because he had been an attorney in the case. Subsequently, the question was raised in several cases, but was not decided because the subscription was held enforceable on the ground that the party to whom it ran had on the faith thereof made expenditures or incurred obligations which were held to constitute sufficient consideration to support the promised subscription. See *La Fayette County Monument Corp. v. Magoon,* 73 Wis. 627, 42 N. W. 17; *Gibbons v. Grinsel,* 79 Wis. 365, 48 N. W. 255; *Board of Trustees of Seventh Day Baptist Memorial Fund v. Saunders,* 84 Wis. 570, 54 N. W. 1094; *Hodges v. O'Brien,* 113 Wis. 97, 88 N. W. 901. Those decisions are in accord with the view most commonly held, "that such a subscription is an offer to contract which becomes binding as soon as the work toward which the subscription was promised has been done or begun, or liability incurred in regard to such work on the faith of the subscription." 1 Williston, Contracts (Rev. ed.), p. 404, § 116.

There are no such grounds, however, in the case at bar. There is no proof that either St. Jude's Church or any subscriber advanced any money or incurred any obligation on the faith of McCanna's subscription, prior to his death. In discussing the conflict in the authorities as to whether the promise of a subscriber constitutes sufficient consideration for the promise of the other subscribers, it is stated in 1 Page, Contracts, p. 943, § 561, that,—

"In jurisdictions in which the consideration may move from a third person, the mutual promises of the subscribers, if actually intended by them as considerations, should be held to be sufficient considerations for the promise to pay such subscription to the charitable organization, if such organization, or the representative thereof, is a party to such con-

tract. The great weight of authority is to the effect that *if the contract is made between the subscriber and the beneficiary, so that the beneficiary is a party to the contract,* the beneficiary may maintain an action upon such contract in all jurisdictions in which the consideration need not move from the promisee."

Under the majority rule, which can be considered applicable in this jurisdiction, in view of our rule that a stranger to a contract who is a beneficiary thereunder may maintain an action thereon, even though the consideration did not move from him (*Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440), there is in this case still the question as to whether it can be held that the agreement for the subscription was made between St. Jude's Church and McCanna so that the church was a party thereto, as a matter of law. Whether the church was legally a party to and bound by the agreement depends upon the effect in law of Rev. Hanz's action in writing the words "Saint Jude's Church, by Joseph E. Hanz," after the word "accepted" at the foot of the agreement.

The defense contends that the church did not thereby become a party to the agreement because Rev. Hanz was not authorized to bind the church by an agreement to expend subscriptions, in a sum not to exceed $300,000, for the purpose of the erection and maintenance of the proposed school by the church; and that the agreement was merely a transaction between Rev. Hanz and McCanna, without any corporate act on the part of the church authorizing or approving the project, or rendering it a party thereto or bound thereby. In support of that contention the defense argues that the building and maintenance of a high school and the securing of donations and funds therefor are temporal or business matters as to which a religious corporation can act solely through its trustees or governing body acting as a board; and that, consequently, Rev. Hanz's acts without authoriza-

tion by a board in relation to such a temporal or business matter of the church were not legally binding upon the corporation. On the other hand, the claimant contends that the project was not a mere temporal or business matter, within the province of solely the congregation or its trustees, but that it was a project for religious education and therefore a matter within the authority of the archbishop, and of Rev. Hanz under his supervision, as to which the latter, as pastor of the church, was fully authorized to act and to accept subscriptions and donations. Both parties cite sec. 187.12, Stats., under which St. Jude's Church was organized as a religious corporation. The applicable provisions are:

"(1) *Bishop may incorporate.* . . . The bishop of each diocese, being the only trustee of each Roman Catholic church in his diocese, may cause any or all congregations therein to be incorporated by adding four more members as trustees as hereinafter provided. The bishop and vicar-general of each diocese, the pastor of the congregation to be incorporated, together with two laymen, practical communicants of such congregation (the latter to be chosen from and by the congregation), shall be such trustees.

"(2) *Powers.* Such corporation . . . may purchase, accept, own and hold property, real and personal, and sell, convey and otherwise dispose of the same and contract debts, all of which shall be done subject to the by-laws and the restrictions hereinafter provided. Such corporation may sue and be sued, have a common seal, which may be changed at pleasure, and do all things necessary for the proper transaction of its business and duties and all things needful in the management of the temporal affairs of the Roman Catholic church of such congregation, and for the benefit thereof; . . . and also to purchase, own, hold, regulate, control, manage or dispose of any eleemosynary, educational, cemetery, religious or other property which it may acquire in connection with said church and the congregation thereof or be assigned to it by the bishop or other person or persons."

"(5) *Debts; sale of realty.* The bishop or administrator, the vicar-general, pastor, treasurer and secretary shall be

ex-officio directors of such corporation. They may, by a majority vote, contract debts not exceeding in amount the sum of three hundred dollars; but debts in excess of that sum may be contracted by the consent and vote of all the directors; such debt may be evidenced by a note or other evidence of debt and may be secured by a mortgage on the property of such corporation. . . . The real estate of the corporation shall not be sold, mortgaged, incumbered or disposed of in any manner without the vote and consent of all the directors."

By those provisions there is vested in the board of directors of the church corporation the power to "do all things necessary for the proper transaction of its business and duties and all things needful in the management of the temporal affairs of the Roman Catholic church of such congregation; . . . and also to purchase, own, hold, regulate, control, manage or dispose of any eleemosynary, educational, cemetery, religious or other property which it may acquire in connection with said church and the congregation thereof. . . ." But, under sub. (5), the power vested in the directors of the corporation, consisting ex officio of the bishop or administrator, the vicar-general, and the pastor of the congregation and two laymen, chosen by the latter, to contract debts not exceeding $300 in amount can be exercised only upon a majority vote of those directors; and the power to contract debts in excess of that amount, or for the sale, mortgaging, or disposal of its real property in any manner, cannot be exercised without the vote and consent of all the directors. Consequently, it would seem that transactions for the procurement of funds for the building and maintenance of a high school by subscriptions and contracts by which the church was to become obligated to expend funds for that purpose, constituted business or temporal affairs which the church could engage in only as authorized by action taken by its directors acting as a board, and upon the affirmative vote

of the number of directors required by the statute. In exercising the powers in respect to business or temporal matters, which are within the province of the board of directors, they alone, acting collectively as a board, can take or authorize action binding on the corporation; and their authorization or ratification, acting collectively and by the vote required by statute, is essential to valid corporate action. The corporation is not bound by but the individual or separate action of a member of the board. As was said in passing upon the individual acts of trustees of a Roman Catholic church organized under the statutes of New York, "the trustees of the defendant were, therefore, the only legal representatives of the corporation in exercising its corporate franchises and powers. . . . They, acting as a board, can make or authorize acts binding on the corporation, and they alone." *People's Bank v. St. Anthony's R. C. Church,* 109 N. Y. 512, 17 N. E. 408. See also *Landers v. Frank St. M. E. Ch. of Rochester,* 97 N. Y. 119; *Columbia Bank v. Gospel Tabernacle Church,* 127 N. Y. 361, 28 N. E. 29; *St. Patrick's R. C. Church v. Gavalon,* 82 Ill. 170; *Cointe v. Congregation of St. John the Baptist,* 154 Wis. 405, 143 N. W. 180. In *Methodist Episcopal Church of Sun Prairie v. Sherman,* 36 Wis. 404, 408, this court declared, in the absence apparently of any statute prescribing the vote required for effective corporate action, that a corporation aggregate having a board of trustees to manage its affairs can contract only by action taken by vote at a formal meeting of the aggregate body, or by vote of its board of trustees. In holding that an alleged acceptance of a subscription by the pastor of the church was ineffective, the court said:

"It does not appear in the record that Dr. Hadfield was appointed agent to receive subscriptions, by vote of either body. On the contrary, it does appear by the evidence of one of the trustees, that his only show of authority was a request at an informal meeting of the trustees, pastor and

class leaders. This gave him no authority for the corporation. He solicited subscriptions, during a religious service, for a religious purpose. Manifestly, there was present no formal meeting of the corporation aggregate, or of the select body. The appellant then made the offer, when there was present no body or agent authorized to accept it for the corporation. It remained a mere offer, which the appellant might retract, until accepted by the corporation." See also *Leonard v. Lent,* 43 Wis. 83.

Inasmuch as, in the case at bar, no action was taken during McCanna's lifetime by the board of trustees or the board of directors of St. Jude's Church in relation to the high-school project or the subscriptions therefor, McCanna's death, prior to an effective acceptance or ratification of the subscription agreement by corporate action so as to make the church a party thereto, resulted in the revocation of the subscription so that his estate was not bound thereby. 25 R. C. L. p. 1398, § 3, and p. 1408, § 14; *Furman University v. Waller,* 124 S. C. 68, 117 S. E. 356; *Pratt v. Elgin Baptist Church,* 93 Ill. 475; *Twenty-Third Street Baptist Church v. Cornell,* 117 N. Y. 601, 23 N. E. 177; *In re Helfenstein,* 77 Pa. St. 328, 18 Am. Rep. 449; *Robinson v. Nutt,* 185 Mass. 345, 70 N. E. 198; *Board of Home Mission v. Manley,* 129 Cal. App. 541, 19 Pac. (2d) 21. After his death, the unaccepted subscription could not be validated by the trustees' adoption of a motion indorsing for the first time by corporate action Fr. Hanz's plan to build the school, and authorizing him to continue to build up the fund which he had started for that purpose.

It follows that the judgment under review must be reversed with directions to enter judgment disallowing the claim.

*By the Court.*—Judgment reversed with directions to enter judgment disallowing the claim.