Hodges v. O'Brien, 113 Wis. 97.

HODGES and others, Respondents, vs. O'BRIEN, Appellant.

*January 11—January 28, 1902.*

*Subscriptions: Contracts: Rescission: Abandonment: Performance of conditions: Court and jury: Prejudicial error: Release of subscriber: Instructions to jury.*

1. Where one signs a subscription for the erection of a church upon condition that a certain amount be subscribed together with an agreement that he should be repaid the sum he had expended in the erection of a temporary chapel, such agreement, followed by the repayment, constitutes a binding contract between the parties, which cannot be revoked except by mutual consent, nor rescinded except upon abandonment of the scheme or failure to collect the amount agreed upon.

2. Where defendant had regained possession of his subscription notes given for the erection of a church, and, in an action thereon, there was evidence tending to show that the required amount of subscriptions were not secured before he regained possession thereof and was transferred to another church; and that, after his successor was installed, the project was revived, and the former subscriptions were not considered binding, it is error to refuse to submit to the jury the question whether, at the time the subscriber regained possession of the notes, the plan of building a church had been abandoned, and the sub-scribers released from their obligations.

3. Where a subscription to a church building fund is conditioned on a certain amount being subscribed, a subscriber is not prej-udiced by a finding that the required amount was subscribed, when the evidence shows that, including his subscription and the amounts collected for memorial windows, sale of pews, and money raised at a church fair, the amount collected exceeded in the aggregate the required amount.

4. In such case it appeared that the subscriptions were payable in notes maturing July 1, 1892, and January 1, 1893; that the con-tract for the building was let in the fall of 1892, and that enough was collected to reach the required amount. *Held*, in the absence of a definite showing when the different amounts subscribed were collected, that a subscriber cannot claim a re-lease from his obligation on the ground that the requisite amount was not collected within a reasonable time after his subscription.

5. Statements by the trial judge to the jury emphasizing the cost of the trial to the county and the parties, impressing on them their duty to decide the case, and asking them to struggle with the case until they came to an agreement, without any warn-ing that individual jurors need not yield their personal con-victions, criticized.

APPEAL from a judgment of the circuit court for Iowa county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

This action is based upon the same subscription paper mentioned in *Hodges v. Nalty,* 104 Wis. 464. It is brought to recover the amount subscribed by the defendant toward the building of a church in the parish where he officiated as priest. The plaintiffs are the building committee, suing in behalf of all others interested. Their old church had been

burned.  Soon thereafter the defendant erected a small chapel at his own expense for the congregation to occupy until other arrangements could be made.  In January, 1892, the congregation was assembled, which elected the plaintiffs, the defendant, and others as a building committee, and directed them to take charge of collections and select plans for a new church.  The committee had various meetings, and voted to build a church costing not less than $10,000, and, if that sum was not collected, the subscriptions taken were to be null and void.  A subscription paper was passed around among the committee, and various amounts were subscribed. The defendant signed for $1,500.  As a consideration therefor, the plaintiffs claim that it was then agreed that the defendant should be paid the sum of $237, which represented his cash outlay in building the chapel mentioned.  This sum was afterwards paid defendant.  On February 1, 1892, defendant executed his two promissory notes to the treasurer of the society for $750 each, payable July 1st and January 1st following, with six per cent. interest after due, and payable at the Citizens' Bank, Monroe, Wisconsin.  Many of the other subscribers executed similar notes.  The committee, with the defendant, entered into an active canvass for funds.  The plaintiffs claim that it was continued until a sum was raised sufficient, with the insurance money from the old church, to amount to over $11,000.  The church was built during the fall of that year, and the plaintiffs insist that the defendant should now pay his subscription.  The complaint sets out the history of the different transactions as herein stated, and alleges that defendant regained possession of his said notes without consent, and now refuses to pay the same, or any part of his said subscription.  The answer contains many specific denials, and sets out as a defense that the scheme to build the church was merely tentative, and all subscriptions were made upon the understanding that they were void unless $10,000 was subscribed and collected; that

an active canvass for funds was made, and they were only able to secure about $6,000, whereupon the project for building the church was abandoned, and his notes were given up. About July 1st defendant was transferred to another parish, and had nothing more to do with the project, and thereafter his successor instigated and carried out a new scheme for building a church without reference to the defendant's liability on said notes or subscription paper.

A trial by jury resulted in a special verdict to the effect that:

. (1) That defendant did not notify the committee or the congregation that he refused to be bound by his subscription prior to their incurring liability in reliance thereon. (2) That defendant made his subscription and gave the two notes upon an agreement that, if he subscribed $1,500, he should be paid out of the church funds the sum of $237 he had expended in the erection of the temporary chapel. (3) That the said subscription and the notes were not made independent of the payment to defendant of said sum of $237. (4) That the subscription (including the unexpended insurance money) did not reach the sum of $10,000 at any time before the defendant severed his connection with the congregation. (5) That when defendant took his notes he intended to withdraw his subscription. (6) That the building committee did not consent to such withdrawal. (7) Damages, $1,500. Answered by the court by consent of counsel.

The court refused to submit a question requested by defendant, as follows:

"At the time the defendant secured possession of the notes sued on in this action, had the project to build a new church and to raise money therefor, in pursuance of which the defendant subscribed to the building fund and gave such notes, been given up by the building committee and congregation, and the subscribers released?"

After the jury had been out over one night, they returned into court, and desired further information regarding evidence. The court informed them it was impossible to pick

out different items of evidence, and in urging them to agree used the following language to which defendant's counsel took exception:

"You have already seen that attorneys from a distance have been called in at very considerable expense to the parties."

"You know also that a large number of witnesses from a distance have been in attendance at considerable expense."

"You know that the case has dragged through three days."

"You may not know, but it is true, that every day that this court sits costs this county $100. Every five minutes this court is in session costs this county one dollar. Now, this case has cost this county pretty well onto $300 for jurymen and court officers. It has cost the parties a great deal for attorneys and for witnesses."

"It will have to be decided by a jury, and you are just as intelligent a jury—and you know that yourselves—as could be gotten together, probably, to try this case either at this term or the next, and it is very important, indeed, that this county and the parties should not be put to the expense of retrying this case. . No twelve men can settle it better than you, and you well appreciate the necessity that is upon me in asking you to struggle with this case further until you come to an agreement."

"Because, if you cannot agree, and this case has to be retried at the next term of court, it costs Iowa county between two and three hundred dollars, to say nothing of the other expenses."

"I trust, therefore, gentlemen, that after again retiring you will make further efforts, and come to an agreement."

Several motions by defendant for judgment, to strike out the answers to questions 1, 2, 3, and 6, and for judgment, and to set aside the verdict, and for a new trial, were each denied, and duly excepted to. Judgment was entered for plaintiffs, from which this appeal is taken.

For the appellant there were briefs by *Spensley & McIlhon* and *P. A. Orton,* and oral argument by *Mr. Orton* and *Mr. Calvert Spensley.*

For the respondents there was a brief by *Colin W. Wright* and *Jones & Stevens,* and oral argument by *Mr. Wright* and *Mr. B. W. Jones.*

BARDEEN, J.    Counsel for the defendant first makes a vigorous attack upon the decision in *Lathrop v. Knapp,* 27 Wis. 214, as laying down bad law, and being at variance with the almost universal current of authority elsewhere. The true rule governing such subscriptions is asserted to be that the subscription is simply a proposition, which, until expressly or impliedly accepted by the promisee, may be revoked by the subscriber. If a review of that case was necessary for the decision of this appeal, we might find it difficult to subscribe to all that is said in the prevailing opinion, but we do not consider that the question is fairly before us. The plaintiffs claim, and the jury have found, that defendant signed the subscription paper upon an agreement that he should be paid the sum he had expended in the erection of the temporary chapel mentioned in the evidence. That sum was paid to him from the funds of the congregation, and, conceding the circumstances claimed by plaintiffs to exist, such agreement and payment constituted a binding contract between the parties. It could not be revoked except by consent, or rescinded except upon failure to secure and collect the amount of money agreed upon as a condition for making the subscriptions absolute. Under these circumstances the defendant could not release himself from the obligations assumed. If the parties interested consented to his release, or the scheme of building a new church was abandoned, or the amount agreed upon was not collected, the defendant would stand freed from his obligations. These issues were plainly raised by the pleadings.

Upon the question of consent to his release the jury found against the defendant, but his counsel claim that issue was not fairly submitted. They insist that, if the building com-

mittee acquiesced in his reclaiming the notes he had given, that would be sufficient. But we do not so regard it. The testimony of defendant regarding the circumstances under which he regained possession of his notes may have some bearing upon the question of abandonment of the scheme. Mere acquiescence in his acts by some of the members of the committee is not sufficient to release him. The defendant asked the court to submit to the jury the question of whether, at the time he regained possession of his notes, the plan of building a church had not been given up, and the subscribers released from their obligation thereon. The court refused so to do, and no question in the verdict covers the issue. As already stated, the issue was squarely presented by the pleadings. Considerable testimony was offered tending to show that, after a vigorous canvass for subscriptions, they failed to secure the required amount. Some trouble arose between the defendant and his congregation. For several months the project was at a standstill. The defendant was transferred to another church. When his successor was installed, the project was revived. There are some circumstances tending to support the defendant's contention that a new start was taken, and that former subscriptions were not considered binding. The plaintiffs sharply insist such was not the case. However, there is evidence in the case tending to support the defendant's view, and we are of opinion the court erred in refusing to submit the issue to the jury. It may be a little difficult to say just what acts are necessary to constitute an abandonment of the scheme. The church was to be built for the congregation. The committee stood as the representatives of the congregation. While they may not have entirely abandoned the plan of building a church at some time in the future, still if the project under way had miscarried, or failed of completion, and it was generally understood that it was given up, and the subscribers released from their subscriptions, that might be considered an aban-

donment, although no formal action of the committee or congregation had been taken; in other words, an abandonment may be implied from the acts and conduct of the interested parties without any formal vote to that effect. Of course, mere fugitive acts of individuals, or of a fraction of those interested, will not suffice. The understanding must be general, and the acts in relation thereto must be of such a nature as to reasonably point to that conclusion, and lead to a conviction that the project has come to an end.

At the time the defendant demanded a special verdict, the court made findings of what he considered to be the uncontradicted facts. Among other things, he found that the new church was to cost at least $10,000, of which amount about $3,000 insurance money was on hand; and that, unless the sum of $7,000 was raised by subscriptions, none of those who subscribed should be held liable. In the course of a few months over $7,000 was subscribed and pledged, and a church building costing nearly $12,000 was erected. The defendant excepted to the latter finding, and now argues that the evidence fails to support the court's conclusion. The figures submitted by defendant show the amount collected, including defendant's subscription, was a trifle over $6 short of the required amount. In his computation he ignores the amount collected for memorial windows, sale of pews, and money raised at a church fair. These sums raised the aggregate amount collected considerably beyond the limit. We see no reason why these amounts are not proper to be considered.

It is further argued that it does not appear that the requisite amount was collected within a reasonable time after the subscription, and hence the defendant was released. Most of the notes taken were payable July 1, 1892, and January 1, 1893. The contract for the building was let in September or October, 1892. It does not definitely appear when the different amounts pledged were collected. It is a matter of common knowledge that such subscriptions are not always

paid with promptness. Still enough were paid to reach the required amount, and we cannot say there was any such un-. reasonable delay in the matter as to affect the defendant's rights prejudicially.

After being out for some time, the jury returned into court for further instructions regarding certain matters of evidence. The court informed them that it would be difficult to pick out any given items of evidence, and that to read the whole would occupy a long time. He then told the jury that attorneys had come from a distance, at great expense to the parties. A large number of witnesses had been in attendance at considerable expense. The case had "dragged through three days." Every day the court was in session cost the county $100. Every five minutes the court was in session cost $1. The case had already cost the county $300, and the parties a great deal for attorneys and witnesses. If they did not agree, it would have to be retried at the next term at a cost of between two and three hundred dollars, to say nothing of other expenses. He then said:

"No twelve men can settle it better than you, and you well appreciate the necessity that is upon me in asking you to struggle with this case until you come to an agreement."

Counsel for defendant complain that "the jury is directed to struggle with this case further *until they come to an agreement* for no other assigned reason than that, if they failed to agree, there will be a retrial of the case, which will cost Iowa county between two and three hundred dollars, to say nothing of other expenses." Admonitions to the jury of the kind mentioned are very much in the discretion of the trial judge. No iron-bound rule can be stated. A trial judge should not be put in a straight jacket, or deprived of the right to reasonably urge a jury to an agreement. His discretion, however, must not extend to the limit of coercion. In *Hannon v. State,* 70 Wis. 448–454, this court said it was not in good taste to call the attention of the jury to the fact

that the county would be put to pecuniary loss if the jury failed to agree, but held that it was not error sufficient for reversal.   See *Douglass v. State,* 4 Wis. 387–393.   A case more nearly like the one at bar is *Moore v. Platteville,* 78 Wis. 644–650.   In that case the trial court laid some emphasis upon the question of expense to the parties and to the county, but warned them that no juryman should be asked to sacrifice his honest convictions, but should consider the case with an honest purpose to arrive at a conclusion, and bring in a verdict, if possible.   This court held that the rights of the defendant were not prejudiced by the remarks of the court.   See *Odette v. State,* 90 Wis. 258.   Many cases are cited from other states showing that the courts draw the line with varying degrees of strictness.   All substantially agree, however, that if the remarks of the court are of such peremptory character as to be threatening, or can fairly be said to be coercive of a verdict, they are prejudicial.   We question the policy of laying such great emphasis upon the expense to the county or the parties as was done in this case. The statement that the jury might well appreciate the necessity that was upon the court in asking them to struggle with this case further until they came to an agreement, without any warning that individual jurors need not yield their personal convictions, comes so near the line of coercion as to be dangerous.   We have no idea that the learned trial judge had any intention of forcing a verdict, but his language was unguarded, and might have left the impression that he was obliged to keep them out until they reached an agreement, because the expense to the county and to the parties of another trial would be great.

*By the Court.*—The judgment is reversed, and the cause is remanded for a new trial.