MEAD, Appellant, vs. CITY OF RICHLAND CENTER, Respondent.

*March 13—April 15, 1941.*

*Franklin E. Fogo* of Richland Center, for the appellant.
*Loren L. Brindley,* city attorney, for the respondent.

FOWLER, J.    The action was brought under sec. 81.15, Stats., to recover damages for injuries alleged to have been caused by a defective sidewalk.   Trial was had to a jury.   The case was submitted upon a special verdict.   The first question of the verdict inquired whether the sidewalk at the place of injury was "in an unsafe and defective condition."   This question was answered "No."   The court had instructed the jury that the other questions need not be answered if the first question were so answered.   On this verdict judgment was entered for the plaintiff.   The other questions were not answered.

Two errors are assigned: (1) The evidence does not sustain the answer returned by the jury; and (2) the court erred in instructing the jury respecting their duty to agree.

(1)  As to the answer to question 1 we will only say that the evidence presented a jury question.

(2)  The instructions of which the plaintiff complains occurred when the jury was before the court for further instructions after the case had been submitted to them.   After being out from 11:45 a. m. to 8:50 p. m. the jury came into court of their own motion and asked for further instructions as to the meaning of the phrase "unsafe and defective."   Nothing occurred at this time to which exception is or could reasonably be taken.   At 10:10 p. m. the trial judge of his own motion called the jury into court and stated to them that he had called them in to "see if there was anything the court could do to aid them in any way," and said further, "without telling me what your differences are, tell me how near you are to being agreed."   The foreman answered: "We voted eight to four."

The judge then said: "Well, you are not so far from being agreed then. You understand that if ten or more of you are agreed as to the answers to be made to the questions you can return a verdict. You have deliberated together have you?" The foreman answered "Yes." The court then said further:

"In an honest effort to try to get together, and harmonize your views so that you can agree on a verdict? It is the duty of jurors, of course, to agree on a verdict, to return a verdict. That is what we have juries for. And while no · juror can be asked or expected to surrender his or her honest convictions based on the evidence, still you should be willing to listen to the views of one another—those that do not agree with you—and the views they have of the evidence, and see whether or not the view that eight of you have for instance possibly might be better than that of the four who are not in agreement with them. In other words the four who do not agree with the eight might well consider whether their judgment is better than the eight who have listened, I take it, just as carefully to the evidence and have the same desire to return a verdict such as the facts warrant as you have. Do you think Mr. Foreman that by further deliberation it is probable that you can get together?" To this the foreman answered: "Well we can try. We have been deadlocked for quite a while."

The judge then interrogated the jury at considerable length and in considerable detail, and ascertained that the jury had "taken a good many ballots," and that the jury once stood nine to three but "went back to eight to four." The foreman stated that "we could agree on question 4 [relating to contributory negligence] but we can't agree on question 1." After a bit more colloquy the judge said to the jury:

"Well I say, members of the jury, it is your duty to agree on a verdict if it is possible to do so. It is important to the parties. If you do not decide this case why it means just another jury will have to be called in all probability later, and

the parties will have to go through the same procedure again, and probably will have no more intelligent jury than we have now. So it is your duty to strive very earnestly to see if you cannot agree on a verdict that will end the litigation. As I say the court is not telling you that any juror should surrender his or her honest conviction based on the evidence, but they should be willing to listen very carefully to all views of the other jurors; and those in the minority might well consider, it seems to me, whether they are warranted in standing on their views as against that of their fellow jurors, who, as I say, have been just as anxious to render a just and true verdict as the minority has.

"I think I will ask you to—while it is getting cold here, and I understand they cannot heat up this building under the heating arrangement they have. The heat dies down in the evening and does not come up again till morning, and there is nothing we can do about it, so it may make it a little uncomfortable for you, but I think it is my duty to make you deliberate a little further. And if you cannot answer question 1 but can answer question 4 answer questions 4 and 5. But it is your duty to answer question 1; that is a very important question. Has any juror got anything to say now he would like to say to the court before you retire. If not I will ask you to return for further deliberation."

After being out a half hour the jury reported they had agreed and returned their verdict into court.

Upon the whole record of what occurred while the jury were before the court the second time and their speedy agreement thereafter we consider that the trial judge committed error in saying "the four who do not agree with the eight might well consider whether their judgment is better than the eight," and in repeating "those in the minority might well consider, it seems to me, whether they are warranted in standing on their views as against that of their fellow jurors." This was in effect an argument directed to the four jurors tending to lead them to conclude that the eight were more likely to be right than they; it was an intimation that the four were not warranted in standing on their own views because the eight held to the contrary; it carried the implication that

eight men are more likely to be right than four, and the four should therefore accept the view of the eight. None of these propositions is correct, either in law or in logic. While the four were told that they should not surrender their honest conclusions based on the evidence, this did not correct the false implications of the language quoted. This, taken in connection with the obvious fact, expressly called to the attention of the jury by the judge, that if they did not soon agree, they would suffer from discomfort or worse from cold by reason of the heat being turned off from the building, and with the fact that four yielded to the eight in thirty minutes, convinces us that the jury were brought to ostensible agreement by a combination of the court's statements intimating that the eight were more likely to be right than the four, and that the four were therefore not warranted in standing out against them, and that the jury would be kept out in a cold room all night unless they agreed.

In *Brown v. State,* 127 Wis. 193, 201, 106 N. W. 536, it is stated:

"Was there improper influence exerted upon the jury? The rule has become fully settled in Wisconsin that a verdict cannot stand when the jury have been subjected to any statements or directions naturally tending to coerce or threaten them to agreement either way, or to agreement at all, unless it be clearly shown that no influence was thereby exerted. *Roman v. State,* 41 Wis. 312; *McBean v. State,* 83 Wis. 206, 53 N. W. 497; *Hodges v. O'Brien,* 113 Wis. 97, 88 N. W. 901; *Secor v. State,* 118 Wis. 621, 637, 95 N. W. 942; *Koch v. State,* 126 Wis. 470, 106 N. W. 531. It has been said that reasonable ground to suspect such influence suffices. *Roman v. State, supra.* Presumption of prejudicial effect arises in absence of clear proof to the contrary. *Keenan v. State,* 8 Wis. *132; *State v. Dolling,* 37 Wis. 396; *Peppercorn v. Black River Falls,* 89 Wis. 38, 41, 61 N. W. 79; *Hempton v. State,* 111 Wis. 127, 147, 86 N. W. 596."

While the *Brown Case, supra,* involved sickness that was actually caused by confinement of the jury, and actual sickness

is not here involved, we consider that the natural tendency of the statements of the trial judge taken all together was coercive and it is not "clearly shown that no influence was thereby exerted."

The brief of counsel for the respondent cites many cases showing circumstances under which instructions of the trial judge respecting the duty of jurors to agree have been upheld. The limit to which this court has indicated such instructions may go is perhaps sufficiently illustrated by *Barlow v. Foster*, 149 Wis. 613, 136 N. W. 822, and *Boyd v. State*, 217 Wis. 149, 159, 258 N. W. 330. In those cases, while the duty to reach agreement was strongly stressed, the jury were distinctly told that they were not to be kept out until they should agree, and were given to understand that they would be discharged if they did not agree within a reasonable time after making another effort to reach an agreement, and the situations were free from suggestion of subjection to bodily discomfort or unheathful conditions of confinement.

Cases from other jurisdictions are cited by appellant's counsel in support of his position, but we do not consider it necessary to note them here, as our own decisions, and the reasons here given, seem sufficient to support our ruling, but we call attention to the statement following quoted from *Burton v. United States*, 196 U. S. 283, 307, 25 Sup. Ct. 243, 49 L. Ed. 482:

"A practice ought not to grow up of [a judge] inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division. . . . Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury."

*By the Court.*—For the reasons above stated the judgment of the circuit court is reversed, and the record is remanded with directions to order a new trial.