MADISON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 12. Argued October 30, 1973.—Decided November 27, 1973.*

(Also reported in 212 N. W. 2d 150.)

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.    The jury found the defendant guilty of forcible rape [1] and the trial judge, citing the

---

[1] Sec. 944.01, Stats., provides:

"**Rape.** (1) Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years.

"(2) In this section the phrase 'by force and against her will' means either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm."

lengthy criminal record of the defendant, sentenced him to an indeterminate term of not less than fifteen years in state prison. Three issues are raised by writ of error.

*Sufficiency of evidence.*

Was the jury finding that the defendant had intercourse by force and against the will of the complaining witness supported by sufficient credible evidence? Credible evidence supporting the jury verdict of guilty [2] established that: When defendant first met the complaining witness, approximately a year before the night of the raping, he told her: "I'm going to rape you before you leave this town." Between 11 p. m. and 12:30 a. m. on the night of June 13, 1972, or early morning of June 14th, the complaining witness was asleep on her living room couch, with her two children sleeping in a bedroom 20 feet away. When she awoke, defendant was standing over her. She became hysterical, began to scream and attempted to get away; the defendant grabbed her, and broke her upper denture by grabbing her mouth. The complaining witness attempted to run to the kitchen door but defendant slammed it shut, and again grabbed her; he pushed her into the living room where she fell and hit her head on a vacuum cleaner; he tore her clothes off and had sexual intercourse with her. The complain-

---

[2] " 'While the state must prove defendant's guilt beyond a reasonable doubt, on appeal this court's review is limited to determining whether the evidence adduced, believed and rationally considered by a jury was sufficient to prove defendant's guilt beyond a reasonable doubt. Reversal is required only when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt.' " *Brown v. State* (1973), 59 Wis. 2d 200, 208, 207 N. W. 2d 602, citing *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 113, 194 N. W. 2d 808, and *Bautista v. State* (1971), 53 Wis. 2d 218, 191 N. W. 2d 725.

ing witness testified: "I tried to get away. I tried to fight him and I couldn't. I tried to push him off me to get away."

The complaining witness testified that during the struggle she suffered a cut mouth and broken upper plate, and that her lower teeth were loosened and subsequently she had to have them extracted. Dr. Jack Strong, who examined her in the emergency room of a nearby hospital, testified that his examination revealed a contusion in the mouth with swelling and bleeding, and her upper denture had been broken. The doctor testified the complaining witness was "crying and extremely upset."

The defendant's contention is that the complaining witness did not resist to the utmost, and that one of her concerns was not to wake her children sleeping nearby. The complaining witness did testify that "I didn't want my children to get harmed," and "Well, if my children would have woke up, he may have done terrible damage." "Utmost resistance" in a particular case depends upon the facts and circumstances of that case.[3] It is a relative term,[4] to be measured by a subjective test.[5] Here the

[3] *Gray v. State* (1968), 40 Wis. 2d 379, 388, 161 N. W. 2d 892, this court holding: ". . . On this issue of required resistance . . . [t]hat case [*State v. Waters* (1965), 28 Wis. 2d 148, 135 N. W. 2d 768] relates resistance to the circumstances and general situation prevailing, making the term 'utmost resistance' a relative rather than a positive term, depending upon the particular victim and the particular circumstances. . . ."

[4] *Brown v. State, supra,* footnote 2, at page 209, stating: "The term 'utmost resistance' found in sec. 944.01 (2), Stats., has been denominated a relative rather than absolute term by this court." *State v. Clarke* (1967), 36 Wis. 2d 263, 278, 153 N. W. 2d 61, certiorari denied, 393 U. S. 861, 89 Sup. Ct. 140, 21 L. Ed. 2d 129, stating: "The physical resistance requirement of rape is relative." (Citing *McLain v. State* (1914), 159 Wis. 204, 149 N. W. 771.)

[5] *State v. Muhammad* (1968), 41 Wis. 2d 12, 19, 162 N. W. 2d 567, holding: ". . . '[U]tmost resistance' is measured by a subjective test of what resistance an individual victim is capable of exerting. In *State v. Schmear* [(1965), 28 Wis. 2d 126, 130, 135 N. W.

mother's concern not to have her children involved, and possibly harmed, in the assault made upon her person is understandable. In no way does it suggest consent or acquiescence. The circumstances here of the entry, hysteria, screaming, attempting to escape, and injuries received [6] clearly sustain the jury finding. It is not required that she do more, when she did enough to establish the non-consensual character of the assault between her thighs. It was not the victim of the rape who was on trial. It was the defendant.

*Return of jury.*

Following instructions by the court on the applicable law, the jury in this case retired to the jury chamber at 10:07 a. m. on September 19, 1972. The jury returned at 1:05 p. m., requesting that certain portions of the testimony be read to them. The jury again returned to the courtroom at 3:10 p. m., requesting that certain portions of the testimony be read to them. Informed that their requests were not sufficiently specific, the jury retired to frame more specific requests and returned to the courtroom at 3:55 p. m., requesting that portions of the testimony be read to them. The jury returned to the courtroom at 5 p. m., stating that they could not reach a decision. Informed of the deadlock, the trial court directed that the jury return to the jury room to ". . . make an honest effort, as fair-minded men and women,

2d 842] we stated that 'While the law requires the utmost resistance as evidence of the woman's will, the law does not require the useless or the impossible.' . . ."

[6] *Starr v. State* (1931), 205 Wis. 310, 312, 237 N. W. 96, stating: ". . . The girl's physical condition is absolutely inconsistent with the idea of voluntary submission to sexual intercourse in the first instance and such as to reduce to the minimum her power of physical resistance and to indicate the overpowering of her will by fear. . . ."

to come to a conclusion on all of the issues presented to them."

With the jury returning three times for the reading of testimony and once to state that they could not agree upon a verdict, the defendant finds a violation of sec. 270.23, Stats., which provides:

"**Jury may be reinstructed.** When a jury, after due and thorough deliberation upon any cause, shall return into court without having agreed on a verdict the court may state anew the evidence or any part of it and may explain to them anew the law applicable to the case, and may send them out again for further deliberation; but if they shall return a second time, without having agreed on a verdict, they shall not be sent out again without their own consent unless they shall ask from the court some further explanation of the law."

If this were a question of first impression, we would not hesitate to hold that this statute does not become applicable until a jury has indicated that it is deadlocked. The words in the statute "after due and thorough deliberation upon any cause" do not fit a return of a jury for the purpose either of having testimony read or instructions as to law given. Consent to return to the jury room is not involved where the nature of the return to the courtroom clearly implies intent to return to the jury room after certain additional information is secured. Until a jury has indicated that it cannot agree upon a verdict, the statute does not apply. So this court has held in a case where a jury first returned to inquire as to a technical question and subsequently returned to report an 8-to-4 split on a verdict.[7] Where the trial court returned the jury to the jury room, stating that at most there could be but two dissenters on any one question, this court held:

---

[7] *La Vallie v. General Ins. Co.* (1962), 17 Wis. 2d 522, 532, 117 N. W. 2d 703.

"We consider the practice employed by the trial court to have been entirely appropriate. Sec 270.23, Stats., is designed to prevent coercion of jurors when for a second time they have returned to the courtroom and indicated that they are unable to agree upon a verdict. *Douglass v. State* (1854), 4 Wis. 403 (*387), 409 (*392).

"It is clear that the jury's first return into court was merely for purposes of obtaining clarification and did not in any way reflect an inability to reach a verdict. In our opinion, a jury may return into court innumerable times to procure information or clarification without activating the provision of sec. 270.23, Stats., which requires that they 'not be sent out again without their own consent.'" [8]

*Reinstruction of jury.*

When the jury here returned to the courtroom to report that they were deadlocked, the trial court gave the following instruction:

"*The Court:* Ladies and gentlemen of the jury, I have been handed a piece of paper that states thereon, 'we are unable to reach a decision on this case.' *This is what is known as a hung jury. I think that I should advise you that in the event this is your final conclusion, that it would be necessary to try this case over again,* so I have just one final statement that I would like to make. (Emphasis supplied.)

["I see no reason why you jurors are not as competent, are not as able, nor as likely to decide the disputed issues of fact in this case and decide them right, as the next jury that would be called to determine such issues.

"I do not want you to understand by what I say that you are going to be made to agree, or that you are going to be kept out until you do agree. I do want you to understand that it is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be openminded, they should listen to the arguments of others, and talk matters over

---

[8] *Id.* at page 532.

freely and fairly, and make an honest effort, as fair-minded men and women, to come to a conclusion on all of the issues present to them.

"You will please retire again to the jury room] Thank you." [Brackets supplied.]

The principal and bracketed portion of the instructions are from the standard jury instructions for criminal cases,[9] the Wisconsin modified *Allen* charge,[10] upheld and found proper in the *Kelley Case*.[11] Defendant's challenge is to the italicized portion of the instructions. These italicized sentences are claimed to be so "coercive" that they denied the defendant a fair trial. We do not find them so. Even excerpted and standing alone, the reference did no more than inform the jury that, if they failed to agree upon a verdict, a new trial would be required. This any jury of ordinary men and women would know to be the situation even if the obvious was not thus cultivated. Read in context the challenged sentences are no more than an appropriate introduction to the standard instructions which followed. As given, the instruction did no more than to charge ". . . *all* members of the jury to make an *honest effort* to agree. In addition, the instruction expressly informs the jury members they will not 'be made to agree, or . . . be kept out until [they] do agree.' "[12] The instructions as given are in no way coercive of minority members to abandon their convictions and conform to the view of the majority in order to reach a verdict.[13] The in-

---

[9] Wis J I—Criminal, Part I, 520.

[10] *See: Allen v. United States* (1896), 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528.

[11] *Kelley v. State* (1971), 51 Wis. 2d 641, 643–647, 187 N. W. 2d 810. *See also: Boyd v. State* (1935), 217 Wis. 149, 158, 159, 258 N. W. 330; *Barlow v. Foster* (1912), 149 Wis. 613, 628–630, 136 N. W. 822; *Jackson v. State* (1895), 91 Wis. 253, 267, 64 N. W. 838.

[12] *Id.* at page 647.

[13] *See: Mead v. Richland Center* (1941), 237 Wis. 537, 540, 297 N. W. 419.

structions here given were less objectionable than others held not grounds for reversal.[14] We find nothing in the instructions as given that could be termed coercive, or would deny the defendant a fair trial. As to the three issues raised, the verdict of guilty is upheld and the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

BEILFUSS, J., took no part.

---

[14] *See: Secor v. State* (1903), 118 Wis. 621, 637, 95 N. W. 942 (reference by court to cost of trial better omitted, but not prejudicial error); *Hodges v. O'Brien* (1902), 113 Wis. 97, 106, 88 N. W. 901 (reference to added time and expense of retrial without assuring the jurors that they need not yield their personal convictions criticized); *Hannon v. State* (1888), 70 Wis. 448, 454, 36 N. W. 1 (court's statement as to cost of another trial held not in good taste but not error); *Douglass v. State, supra,* at pages 410, 411 (*394) (mention of added time and expense of retrial and that case had been tried previously held not coercive).