ZIEGLER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 119. Submitted under sec. (Rule) 251.54 November 1, 1974.—Decided November 26, 1974.*
(Also reported in 223 N. W. 2d 442.)

704

The cause was submitted for the plaintiff in error on the briefs of *Howard B. Eisenberg,* state public defender, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

BEILFUSS, J. The defendant raises three issues on appeal. They are: (1) Was the evidence sufficient to sustain the conviction? (2) Was the supplemental instruction given the jury after it deliberated for seven hours coercive? (3) Was the trial court required to conduct a post-trial evidentiary hearing to determine whether the jury in fact was coerced by the supplemental instruction?

The statute under which the defendant was convicted is sec. 943.20 (1) (d), Stats. It provides in part:

"Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. . . ."

The standard of appellate review as to the sufficiency of the evidence, often repeated, is:

". . . The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. . . ." *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725. *See also: Bailey v. State,* ante, p. 331, 353, 221 N. W. 2d 871; *McAdoo v. State,* ante, p. 596, 223 N. W. 2d 521.

The record in this case is quite extensive and much of the evidence is in dispute. We have reviewed this record thoroughly and believe no useful purpose will be served by setting forth the evidence. We conclude there is ample credible evidence which the jury could accept to convince it beyond reasonable doubt that all the elements of the statute quoted above were sufficiently proven and that the defendant was guilty as charged.

At about 10:15 p. m., on January 25, 1973, after it had been deliberating for several hours, the jury returned to the courtroom and was given the following instruction by the trial judge:

"*The Court:* Ladies and gentlemen of the jury, it is my understanding that you people are working very conscientiously toward what you believe is a proper verdict in this case. And I think that you are all to be commended for the time, regardless of the time that's being taken to do it. In the event that you are in a—somewhat of a stalemate where you arrived at a point where somebody—and I assume that this is what seems to be the

problem—that someone or some people on the jury are holding out one way and someone is holding out another way, I would like to at least for your benefit read you one more instruction. Members of the jury, the trial of a criminal action is quite an expensive undertaking to the county. It requires considerable hard work or labor to get ready and try an action so it is important that you should not give up too easily. You should endeavor to reconcile your differences if you can do so reasonably and come to a unanimous conclusion. That is very important. We must try to accomplish that if we can. Of course, I want you to know that the Court does not ask anybody to give up conscientious convictions based on sound reason. No one should do that. But everyone should be willing to give his or her reasons and talk it over and see if you can—cannot all come to the same conclusion. I think you should try a little longer and you will please retire again to the jury room to give this case further consideration. Now, the reason that I give you this instruction is that in the event this is seemingly the stalemate that has come to this jury, I would assume that you should try at least long enough to see if you can work it out yet for possibly another half hour or hour; and if not, I will have to make arrangements for a hotel and for you to come back from the hotel tomorrow morning and to proceed anew in your deliberations. All right. The jury will be excused to return to the jury room."

The jury returned to the jury room at 10:17 p. m., and came back with its verdict at 10:56 p. m.

The defendant contends on this appeal that the above instruction, while in substantial compliance with Wis J I—Criminal, Part I, 520,[1] recently approved by this court in

---

[1] "I see no reason why you jurors are not as competent, are not as able, nor as likely to decide the disputed issues of fact in this case and decide them right, as the next jury that would be called to determine such issues.

"I do not want you to understand by what I say that you are going to be made to agree, or that you are going to be kept out until you do agree. I do want you to understand that it is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others, and talk matters over

*Kelley v. State* (1971), 51 Wis. 2d 641, 187 N. W. 2d 810, was nonetheless coercive in that it embellished the uniform instruction in two significant respects: (1) Because it made reference to the cost and hard work involved in a jury trial; and (2) because it informed the jurors that they would be sequestered in a hotel for the night and obliged to continue their deliberations in the morning if they failed to arrive at a verdict.

In regard to the portion of the instruction dealing with the expense and hard work involved in the trial, the defendant cites two federal cases in support of his argument that such remarks are coercive and prejudicial and constitute reversible error: *United States v. Smith* (4th Cir. 1962), 303 Fed. 2d 341, and *United States v. Burley* (3d Cir. 1972), 460 Fed. 2d 998, 999. These cases do not represent a unanimous view among the federal courts. The contrary position was taken, for example, in *United States v. Tolbert* (7th Cir. 1969), 406 Fed. 2d 81, and *Thaggard v. United States* (5th Cir. 1965), 354 Fed. 2d 735, certiorari denied (1966), 383 U. S. 958, 86 Sup. Ct. 1222, 16 L. Ed. 2d 301.

*Secor v. State* (1903), 118 Wis. 621, 95 N. W. 942, represents the current state of the law on this point in Wisconsin. The trial court's supplementary instruction in that case included the following language at page 637:

" 'I desire to instruct you a little farther as to the duties in the matter of an agreement in this case, as it has taken considerable time; it has cost, of course, considerable money; and it is important and desirable that, if you can come to an agreement, that you should do so; . . .' "

In response to a contention that such language was coercive and reversible error, this court held, "It would have

---

freely and fairly, and make an honest effort, as fair-minded ·men and women, to come to a conclusion on all of the issues presented to them.

"You will please retire again to the jury room."

been better, had the question of expense . . . been omitted, but we are not ready to say that prejudicial error results therefrom. . . ." *Secor, supra,* page 638.

Likewise in this case, it would have been preferable not to mention the expense and hard work involved in the trial, but the trial court did not over-emphasize the fact or coerce the jury. The instruction only informed it of facts of which the jury was undoubtedly already aware. In accord with this view is *Madison v. State* (1973), 61 Wis. 2d 333, 212 N. W. 2d 150. In that case the trial court in its instruction at page 339 stated:

" '. . . *This is what is known as a hung jury. I think that I should advise you that in the event this is your final conclusion, that it would be necessary to try this case over again, . . .*' "

On appeal on the subsequent conviction, this court stated at page 340:

". . . These . . . sentences are claimed to be so 'coercive' that they denied the defendant a fair trial. We do not find them so. Even excerpted and standing alone, the reference did no more than inform the jury that, if they failed to agree upon a verdict, a new trial would be required. This any jury of ordinary men and women would know to be the situation even if the obvious was not thus cultivated. . . ."

The defendant cites *McDonald v. State* (1927), 193 Wis. 204, 210, 212 N. W. 635, where this court stated, "In argument the district attorney stated that the case had cost the county a lot of money. This was an improper statement." The defendant argues that if it is improper for a district attorney to mention the expense of a trial, it is even more improper for a judge to do so. This is undoubtedly so, but the fact that such statement was improper does not require a finding of prejudicial error. The court in *McDonald* did not reach that conclusion because the remark was corrected by an instruction.

In view of the cases cited above, the remark in this case, while it would have been better left unsaid, did not constitute prejudicial error.

The defendant also objects to the portion of the instruction wherein the trial court told the jury that if it could not "work it out" in the next half hour or hour, it would be put up for the night in a hotel and would recommence its deliberations in the morning. When the jury returned for additional instructions at 10:15 p. m., the trial court probably had three options, assuming additional deliberation was required. It could have sent the jury to a hotel immediately; it could have sent the jury back to deliberate without telling the jury it would be put up for the night, thereby possibly leaving the potentially coercive impression that the jury would have to continue deliberating until it reached a verdict; or it could have instructed the jury to deliberate for a while longer before retiring for the evening.

Most modern-day juries are aware that they will be sequestered once their deliberations begin. The trial court's instruction was not coercive. Its likely effect was merely to assure the jury that it would only be expected to deliberate a short time more before being allowed to retire for the evening. No error was involved in that portion of the instruction.

When the jury returned its verdict, the court asked both parties if they wished to have the jury polled. Each party indicated that he did not. In motions after verdict, however, the defendant's trial counsel indicated to the court that he had been contacted by two jurors who allegedly voted for a verdict of guilty when they in fact believed the defendant to be innocent. The defendant moved that the court independently examine each of the jurors to determine whether the verdict represented their unanimous conclusion. The trial court did not do so and judgment was entered on the verdict.

The rule is well established in Wisconsin that once the jury has returned its verdict, members of the jury are foreclosed from impeaching their own verdict in the absence of fraud, physical coercion or other extraordinary circumstances. *Ford Motor Credit Co. v. Amodt* (1966), 29 Wis. 2d 441, 139 N. W. 2d 6; *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129. The rule's rationale was explained in *Ford Motor Credit Co.*, at page 448, where this court quoted *Brophy v. Milwaukee Electric Railway & Transport Co.* (1947), 251 Wis. 558, 566, 30 N. W. 2d 76:

" 'There is sound public policy behind this general rule prohibiting impeachment of their verdict by the jury. The formality and dignity of the court proceedings are intended to provide as appropriate a surrounding as possible for the achievement of justice. The jury is kept apart from influences which might prejudice its decision. If jurors, after being discharged and after mingling with their friends who may have expressed approval or disapproval of the jury's verdict, are to be allowed to impeach that verdict, the unbiased evaluation of the evidence which the solemn court proceedings are intended to facilitate, will have ceased to control decisions. In talking after the trial to those who did not like the verdict, a juror might be inclined to express a wish that it had gone the other way. He may honestly think that if he had it to do over again he would vote differently. He may admit that he would have voted differently if he had known what the legal effect of the verdict would be. It is likely that there should be such reactions in some cases. But such subsequent reactions are not to be allowed to impeach the verdict. If they were allowed, the verdict would cease to be a decisive thing, putting an end to litigation; the jurors would become subjects of post-trial chicanery, improper persuasion, and possibly bribery. In any event, objective discovery of the truth would be hampered, not promoted.' "

The defendant attempts to relate the equivocation of the two jurors to the allegedly coercive jury instruction

discussed above. No such correlation can be established, however, in view of defendant's trial counsel's statement in the course of motions after verdict that "neither one of these two jurors was the juror that held out to the last as I think the Court was aware when the jury was reinstructed." Since the two jurors had made up their minds before the contested instruction was even given, it is difficult to see how the charge coerced them into voting against their consciences.

As this court held in *Ford Motor Credit Co.*, *supra*, at page 450, jurors may be interrogated by the trial court regarding the veracity of their verdict only where the court is persuaded:

". . . (1) that substantial personal awareness of the alleged impropriety is within the direct and independent knowledge of one who did not serve as a member of the jury, (2) that such knowledge was not derived by such person from a juror after the jury's discharge, and (3) that the challenge to the integrity of the verdict originated from such person rather than from a juror. . . ."

This is not the case here. The trial court did not err in refusing to conduct a post-trial evidentiary hearing to determine whether the jury's verdict was the result of coercion.

*By the Court.*—Judgment affirmed.