QUARLES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 26 (1974). Submitted under sec. (Rule) 251.54 September 9, 1975.—Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 401.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Michael R. Klos,* assistant attorney general.

CONNOR T. HANSEN, J. The nature of the two issues raised on this appeal do not necessitate a detailed statement of the facts surrounding the alleged offense.

The two issues raised are:

1. Was the supplemental instruction delivered by the court sua sponte so coercive as to deny the defendant due process of law?

2. Did the trial court err in excluding at a post-trial evidentiary hearing the testimony of a juror that she was coerced into agreement by the supplemental instruction of the trial court?

Both of these questions have been firmly and conclusively answered in the negative in prior decisions

of this court, and we are not now persuaded to modify or overrule them.

*Sua sponte delivery of supplemental instruction.*

The jury retired to consider the case at 12:06 p.m. on February 23, 1972, and after being taken to lunch, returned to its deliberations. At 4:45 p.m. the trial judge recalled the jury and delivered the following standard supplemental instruction:

". . . I see no reason why you jurors aren't just as competent and just as able or as likely to decide this case and decide it right as the next jury that would be called upon to determine the case. I don't want you to understand, by what I say, that you are going to be made to agree or that you are going to be kept out until you do agree. I do want you to understand that it is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate. They should be open-minded. They should listen to the arguments of others and talk matters over freely and fairly and make an honest effort as fair-minded men and women to come to a conclusion on all of the issues presented to them. Now I'm going to ask you to retire to the jury room again and resume your deliberations. . . ."[1]

The jury then returned to its deliberations, and at 6:55 p.m. returned with a guilty verdict.

The defendant acknowledges that prior decisions of this court have held that this supplemental instruction is not coercive on its face. *Kelley v. State* (1971), 51 Wis. 2d 641, 187 N. W. 2d 810; *Madison v. State* (1973), 61 Wis. 2d 333, 212 N. W. 2d 150; *Ziegler v. State* (1974), 65 Wis. 2d 703, 223 N. W. 2d 442.

However, the defendant argues that this case presents a different situation. This is so, suggests the defendant, because the trial judge gave the instruction on his own initiative without any indication from the jury that they

[1] Wis J I—Criminal, Part I, 520.

were deadlocked. Thus, says the defendant, the jury was not given a reasonable time to deliberate and the sua sponte delivery of the supplemental instruction constituted an invasion of the province of the jury. These arguments are completely without merit. Suffice it to say at this point that the principal defense in this case was intoxication or a drug condition.

The defendant refers to the supplemental instruction given in this case as the *"Allen* charge,"[2] and also as the "so-called *Allen* instruction." We would emphasize that the supplemental instruction given in this case and approved by this court in *Kelley v. State, supra, Madison v. State, supra,* and *Ziegler v. State, supra,* is not the *"Allen* charge" or "so-called *Allen* instruction."

This court, however, expressed its disapproval of this coercive element of the *Allen* charge thirty years ago in *Mead v. Richland Center* (1941), 237 Wis. 537, 297 N. W. 419. The drafters of the Wisconsin instruction considered that decision, omitting all references to minority or majority views. The present Wisconsin instruction charges *all* members of the jury to make an *honest effort* to agree. In addition, the instruction expressly informs the jury members they will not " 'be made to agree, or . . . be kept out until [they] do agree.' " *Kelley v. State, supra,* p. 647.

The defendant also directs our attention to sec. 5.4 (a), (b) and (c) of the American Bar Association, *Standards Relating to Trial by Jury.* These suggested standards were considered in detail in *Kelley v. State, supra.* A further discussion of them at this time would serve no useful purpose.

We would observe, however, that sec. 5.4 (b) of the ABA *Standards* provides in part: "(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat [a supplemental] instruc-

---

[2] *Allen v. United States* (1896), 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528.

tion . . . ." While we have not adopted these standards per se, we find no language in them which would require that the jury inform the trial court that it is deadlocked or having difficulty reaching a verdict before a supplemental instruction can be given. The commentary to the section recognizes that the trial judge can determine to give a supplemental instruction "when the jury has deliberated for some time without reaching an agreement."[3] This is precisely what happened in this case.

Under the facts of this case, we conclude that the trial judge properly exercised his judicial discretion in giving the supplemental instruction.

### *Juror impeachment of verdict.*

On June 2, 1972, more than three months after trial, defendant's motion for a new trial was heard. In an offer of proof by the defense, the jury forewoman testified as to her recollection of the content of the supplemental instruction.

Her impression was that the instruction told the jurors that they had to make a decision, and that they would have to remain until they did, even if this meant staying the night. She also stated that it had the effect of changing some votes on the next ballot taken by the jury.

There is no language in the supplemental instruction to support such an impression. The clear implication of the instruction is exactly the opposite.

The record also reflects that at the conclusion of the trial the members of the jury were individually polled at the request of defendant's counsel. Each juror answered "Yes" when asked if the verdict they had returned was their verdict.

The rule against a juror impeaching a jury verdict has been recognized in Wisconsin at least since 1855. *Birchard v. Booth* (1855), 4 Wis. 85 (*67). The public

---

[3] ABA *Standards Relating to Trial by Jury* (approved draft, 1968), p. 156.

policy reasons for the existence of the rule have been stated many times. Any attempt to here comment on them would be repetitious and redundant. *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789; *Ford Motor Credit Co. v. Amodt* (1966), 29 Wis. 2d 441, 139 N. W. 2d 6; *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129.[4]

Defendant urges that we seize this "unique opportunity" to carve out a "narrow exception" to the general rule against juror impeachment of a verdict. This exception would arise whenever (1) the supplemental instruction is given over timely objection; (2) surrounding circumstances suggest coercion; and (3) the juror comes forward voluntarily with the testimony. We decline the invitation to create such an exception to the established rule.

The exception urged by the defendant runs contrary to the public policy considerations enunciated in our prior decisions. It would tend to unsettle verdicts, and to disclose for critical public scrutiny what is said in the private deliberations of the jury room. Although the defendant claims that his exception would operate only when a juror comes forward "voluntarily," this would not prevent a party from creating the appearance of voluntariness. Lastly, this exception would encourage

---

[4] *See:* Sec. 906.06 (2), Wisconsin Rules of Evidence, effective January 1, 1974, and comments thereon. 59 Wis. 2d R165. The rule in relevant part provides:

"(2) INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. . . ."

rather than prevent anxiety-ridden jurors from coming forward and claiming coercion.

The exception requested by the defendant would allow evidence of the effect of an event [the giving of the supplementary instruction] upon the mind of a juror. Individual jurors would offer subjective testimony regarding the impact of this instruction on their minds, or would speculate about its influence upon the minds of other jurors. The crucial inquiry would necessarily relate to the state of mind of individual jurors, and whether this state of mind was coerced. This kind of testimony has been rejected in every modern formulation of a rule regarding impeachment of a jury verdict. It would be incompetent and inadmissible under the so-called Iowa rule,[5] the ABA *Standard*,[6] the Model Code of Evidence,[7] the Uniform Rules of Evidence,[8] and the new Wisconsin Rules of Evidence.[9]

The defendant's reliance on *Parker v. Gladden* (1966), 385 U. S. 363, 87 Sup. Ct. 468, 17 L. Ed. 2d 420, and *People v. De Lucia* (1967), 20 N. Y. 2d 275, 229 N. E. 2d 211, is misplaced. We deem them to be not in point.

*By the Court.*—Judgment and order affirmed.

---

[5] *Wright v. Illinois & Mississippi Telegraph Co.* (1866), 20 Iowa, 195, 210, 211, is the source of this rule, still followed in many states. Basically, the Iowa rule allows impeachment evidence on matters which do not inhere in the verdict. Juror reaction to instructions is, however, a matter which is deemed to inhere in the verdict.

[6] ABA *Standards Relating to Trial by Jury*, sec. 5.7 (a) (approved draft, 1968).

[7] ALI Model Code of Evidence, Rule 301 (1942).

[8] Uniform Rules of Evidence, Rule 606 (b) (1974). *See also:* Uniform Rules of Evidence, Rule 41 (1953).

[9] Sec. 906.06 (2), Stats.